348    SUPREME COURT OF WISCONSIN,

The State ex rel. Lanning and another vs. Lonsdale.

· THE STATE ex rel. LANNING and another vs. LONSDALE.

*January 10 — February 3, 1880.*

PUNISHING RECUSANT WITNESS FOR CONTEMPT. *(1) Powers of court and commissioner respectively. (2) Application of sec. 4066, R. S. (3) Power of court to punish witness examined in another county. (4) Legislative power over punishment for contempt. (5-9)* AWARD OF INDEMNITY *to injured party, in contempt proceedings. (5, 6) General limitation of the power. (7-9) How far recusant witness liable under it. (10) Right of witness to refuse to answer. (11) What communications to* Commercial Agency *privileged. (12) Practice in contempt proceedings against recusant witness.*

·[1. *It seems* that the mere fact that a court commissioner, taking testimony in a case pending in court, had power to punish for contempt in respect to such examination, would not deprive the court of jurisdiction to punish for such contempt on the commissioner's report thereof.]

2. Sec. 4066, R. S., relating to the attachment of witnesses refusing to testify, etc., notwithstanding some general language therein, does not include the case of persons subpœnaed to depose in *judicial* proceedings pending in the courts, but relates exclusively to witnesses before municipal boards, or committees thereof, and other like bodies authorized to take testimony in other cases. A statement in *Stuart v. Allen,* 45 Wis., 158, *sub fine,* withdrawn.

3. Under sec. 3477, R. S. (as well as at the common law), the circuit court of any county may punish as for a criminal contempt persons subpœnaed to testify in actions pending in such court, before a court commissioner *in another county,* where such persons disobey the summons or refuse to be sworn or to answer.

[4. While the power to punish for contempt was not conferred in the first instance by statute, but is inherent in the court, yet, when a statute prescribes the procedure in a prosecution for contempt, or limits the penalty, the statute controls.]

5. The power of the court in any case to award *indemnity* to an injured party, in a summary proceeding as for a contempt, rests entirely upon the statute.

6. The "loss or injury" for which the court may award compensation to the injured party in a proceeding as for a contempt, under secs. 3490–91, R. S. 1878 (secs. 21, 23, ch. 149, R. S. 1858), is a pecuniary loss or injury for which the party injured might recover damages by an action. *In re Ida Louisa Pierce,* 44 Wis., 411, as to this point, adhered to.

The State ex rel. Lanning and another vs. Lonsdale.

7. While sec. 4063, R. S., gives or recognizes a right of action by the aggrieved party against one duly subpœnaed and under obligation to attend as a witness, who fails to attend without reasonable excuse, to recover damages caused by such failure, no such action will lie against a witness for a mere refusal to answer proper questions, at least without allegation and proof of some special loss or injury.

8. Where a witness is prosecuted and punished as for a criminal contempt, the relator in the proceeding cannot recover the expenses of the prosecution, in an action against him.

9. An order of the circuit court adjudged that defendant was in contempt for his refusal to answer proper questions upon his examination as a witness before a court commissioner, in an action pending in said court, and that such refusal was calculated to and did impede and prejudice the plaintiffs in said action in their rights and remedies therein, and that such plaintiffs had been put to a large amount of costs and expenses in such proceedings, to wit, a specified sum; and it thereupon adjudged that, instead of a fine, defendant pay plaintiffs said sum, and that he be committed to jail, and there remain charged with such contempt, until he should answer such questions and *pay said sum of money*, etc. *Held*, that the court had no authority to adjudge payment of *indemnity* to the plaintiffs in such a case, instead of imposing a fine.

10. When a witness refuses to answer a question on the ground that his answer might show him guilty of a misdemeanor and subject him to a penalty, the court must determine, under all the circumstances of the case, whether such is the tendency of the question, and whether the witness shall be required to answer.

11. A communication to a " Commercial Agency " from its local correspondent, as to the commercial standing of a person doing business in any place, is so far privileged in the hands of the persons conducting such agency, that they may lawfully make known its contents confidentially to their subscribers seeking information upon that subject; provided this is done without malice and in the belief that the statements are true.

12. The regular course of proceeding where an officer, taking the deposition of a witness to be used in an action pending in a court of record of this state, reports to such court that the witness has refused to answer interrogatories propounded to him — stated.

APPEAL from the Circuit Court for *Fond du Lac* County.

This is a proceeding against the appellant, *Lonsdale*, as for a contempt, to enforce a civil remedy. The alleged contempt consisted in the refusal of *Lonsdale* to answer certain interrogatories propounded to him when giving his deposition as a

witness before a court commissioner of Milwaukee county, in an action pending in the circuit court for Fond du Lac county, in which the relators are plaintiffs and one Lewis E. Reed is defendant.

That action is to recover damages for an alleged libel contained in a letter which it is charged the defendant wrote, and sent to some commercial agency in the city of Milwaukee, giving an unfavorable report of the financial standing and responsibility of the relators.

*Lonsdale* was the managing agent of the commercial agency of R. G. Dun & Co., at Milwaukee, and, in obedience to a subpœna *duces tecum*, appeared before the commissioner to give his deposition in the action as a witness. The subpœna required him, among other things, to produce all letters and correspondence in his possession or under his control as manager of such agency, received at or by the agency from Reed, the defendant in the libel suit, relating to the financial standing or credit of the relators. On being interrogated in relation thereto, *Lonsdale* refused to disclose whether the agency had received any such communications from Reed, or whether Reed was one of the correspondents of the agency, and also refused, when requested so to do, to produce any correspondence or documents called for by the subpœna. The ground assigned for such refusals was, that his answers to the questions propounded would have a tendency to accuse himself of libel, which is a misdemeanor, or to expose him to a penalty.

The commissioner thereupon reported the above facts to the circuit court for Fond du Lac county. On such report, and an affidavit of one of the attorneys for the relators showing the facts above stated, the circuit court granted an order that *Lonsdale* show cause, on a day therein named, why he should not be adjudged guilty of a contempt by reason of the premises. *Lonsdale* appeared pursuant to the order, and admitted that the statements of fact in such report and affidavit were true. The court thereupon made the following order:

The State ex rel. Lanning and another vs. Lonsdale.

"It is now here ordered and adjudged that said *John E. Lonsdale* has been and is guilty of the misconduct alleged against him in the proceedings and premises, and is guilty of contempt therein, and that the said misconduct was calculated to and did actually impede and prejudice the said plaintiffs, *Azariah* and *Alpheus Lanning*, in their rights and remedies in their said action against said. Lewis E. Reed, defendant therein, and that the said *Azariah* and *Alpheus Lanning* have, by reason of said misconduct, been put to a great amount of costs and expenses, to wit, the sum of $221.17. It is further ordered and adjudged that instead of a fine the said *John E. Lonsdale* pay to the plaintiffs the costs and expenses in such proceedings, amounting to the said sum of $221.17, and that the payment thereof be and the same is hereby imposed on said *John E. Lonsdale* for his misconduct.

"It is further ordered that said *John E. Lonsdale* be, and he is hereby, directed to stand committed to the common jail of the county of Fond du Lac, there to remain, charged with said contempt, until he shall, on due notice to said plaintiffs' attorney, proceed and testify in said action (if pending), as a witness before said commissioner, this court, or some officer competent and authorized to take said testimony, and shall answer said questions, and comply with the said directions hereinbefore set forth, and until he shall fully pay the said sum of $221.17 so imposed, costs and expenses of the proceedings, unless he shall sooner be discharged by the court; and that a warrant of commitment issue to carry this judgment into effect."

From the above order, *Lonsdale* appealed.

For the appellant, there were separate briefs by *David. S. Ordway* and *H. M. Finch* in behalf of *Finches, Lynde & Miller;* and there was also oral argument by *Mr. Lynde* and *Mr. Ordway.* The argument of *Mr. Ordway's* brief is substantially as follows:

1. Under secs. 2434 and 4066, R. S., only the court commis-

sioner before whom the appellant's deposition was taken had authority or jurisdiction to commit for the supposed contempt. Prior to the time when the present revision took effect, no such authority had been given to court commissioners; but that revision was intended to "give authority to officers taking depositions to punish for contempt as in New York." *Stuart v. Allen*, 45 Wis., 158. In New York, an order similar to that here in question was reversed on the ground that the officer before whom the witness was testifying should have committed, and not the court. *People ex rel. Valiente v. Dyckman*, 24 How. Pr., 223. True, the language of the statute is, that the officer "*may* by warrant commit;" but under this language he is *bound* to commit wherever the public or an individual has a claim *de jure* to have the power exercised. *Newburgh Turnp. Co. v. Miller*, 5 Johns. Ch., 113; *Kane v. Footh*, 70 Ill., 587; *Market Nat. Bk. v. Hogan*, 21 Wis., 318; *Cutler v. Howard*, 9 id., 312. True, also, the circuit court has an unquestionable power of *review;* but under this it merely affirms or vacates the commissioner's order of commitment. 2. There was no authority either in the court or the commissioner to commit the appellant to the jail of *Fond du Lac* county. Residing in Milwaukee county, more than thirty miles from the place of trial, he could not have been compelled to go to Fond du Lac county to testify, if he had offered to give his deposition. When he was examined before the commissioner in Milwaukee county, if the commissioner (whose proper office it was to punish him for any contempt) had committed him to the jail of that county, it is doubtful whether the circuit court of the same county, rather than that of Fond du Lac county, would not have had the power of review. But if that power belonged to the latter court, still it acquired thereby no right to make any order of commitment which the commissioner himself could not have made. Subd. 5, sec. 3477, R. S., in terms empowers the court to punish by fine and imprisonment "all persons

summoned as witnesses," for refusing to obey the summons, or to be sworn, "or to answer as such witnesses;" but it is submitted that this refers only to witnesses who are within the jurisdiction of the court and are summoned before the court. In *State v. Brophy*, 38 Wis., 425, the question which county the sheriff could be imprisoned in was not raised. This is a *quasi* criminal proceeding; if any crime has been committed, it was committed in the county of Milwaukee; if any person has been treated with contempt, it is the commissioner; and if the proceeding were criminal *in form* under sec. 2565, R. S., only the commissioner would have the right to determine in the first instance whether the refusal was a contempt of his authority. *In re Eldred*, 46 Wis., 530. 3. The appellant had a right to decline answering the questions which he did refuse to answer. A witness cannot be required, in this state, " to give any answer which shall have a tendency to accuse himself of any crime or misdemeanor, or to expose him to any penalty or forfeiture." The appellant had testified that the reports made from their correspondents to the agency were *furnished by them to their subscribers*. It is a libel to publish falsely that a man is insolvent and unable to pay his debts. 2 Addison on Torts, 928–9; *Cox v. Lee*, L. R., 4 Exch., 284; *Sunderlin v. Bradstreet*, 46 N. Y., 188; *Taylor v. Church*, 8 id., 452. And, in general, all who are in any manner instrumental in making the defamatory publication or procuring it to be made, are jointly and severally responsible therefor. Cooley on Torts, 194; 3 Greenl. Ev., § 169; *Robinson v. Jones*, 9 Cent. L. J., 147; *Williamson v. Freer*, L. R., 9 C. P., 393–5; *Beardsley v. Tappan*, 5 Blatchf., 498. It is plain, therefore, that an answer to the questions put to the respondent *might* have exposed him to a criminal prosecution for libel under sec. 15, ch. 172, R. S. 1858. The constitution, indeed, provides that " in all criminal prosecutions for libel the truth may be given in evidence, and if it shall appear to the jury that the matter charged as libellous is true, and

was published with good motives and for justifiable ends, the party shall be acquitted; and the jury shall have the right to determine the law and the fact." Art. I, sec. 3. But the court cannot in this proceeding determine whether the respondent, if subjected to a criminal prosecution, would be able to make out a defense to the satisfaction of the jury. True, if it affirmatively appears that the statute of limitations has run upon the offense, or that there is full statutory protection of the witness against prosecution, the privilege cannot be claimed; but that rule has no application here. And, " unless the court can see that the witness *will not* be criminated, the privilege will be recognized and protected." *Coburn v. Odell,* 10 Foster, 555; *Janvrin v. Scammon,* 9 id., 290; *People v. Mather,* 4 Wend., 254–7. Some courts hold that it is for the witness to state on his oath that he believes that an answer to the question will tend to criminate him, and that the statement is conclusive *(Fisher v. Ronalds,* 16 Eng. L. & E., 418, and note 1; *Osborne v. The London Dock Co.,* 29 id., 382; 74 E. C. L., 762); while other courts declare that it is the province of the court to judge. See *Warner v. Lucas,* 10 Ohio, 338; *In re Fernandez,* 10 C. B., N. S. (100 E. C. L.), 38; *Harrison v. Southcote,* 1 Atk., 539; *Cates v. Hardacre,* 3 Taunt., 423. The appellant in this case answered sufficiently far to show that further answers in the same direction might and probably would tend to convict him of libel. The general rule is, that the witness may claim the privilege at any stage of the inquiry, if the fact as to which he is interrogated forms a link in the chain of testimony upon which he might be convicted; and the exceptions found to that rule are inapplicable to this case. 1 Greenl. Ev. (13th ed.), § 451 and notes; Gresley's Eq. Ev., § 81 and notes; *Regina v. Garbett,* 2 Car. & K., 483 (61 E. C. L., 495); *Dandridge v. Corden,* 3 Car. & P., 11 (14 E. C. L., 185); *Rex v. Slaney,* 5 id., 213 (24 E. C. L., 286); *Cartwright v. Green,* 8 Ves. (Sumn. ed.), 409 and note 1; *Claridge v. Hoare,* 14 id., 59 and note *a;*

*Paxton v. Douglas*, 16 Ves., 242; *Short v. Mercier*, 1 Eng. L. & E., 212–15; 15 Jur., 93; *People v. Mather, supra; Bellinger v. The People*, 8 Wend., 597; *People v. McCoy*, 45 How. Pr., 216; *Byass v. Sullivan*, 21 id., 52; *In re Tappan v. Douglass*, 9 id., 394; 2 Barb., 224; *Bank of Salina v. Henry*, 2 Denio, 155, and 3 id., 593; *People v. Hackley*, 24 N. Y., 81; *Chamberlain v. Willson*, 12 Vt., 591; *State v. Wentworth*, 65 Me., 243; *Coburn v. Odell*, 10 Foster, 555; *State v. Foster*, 3 id., 354; *State v. K.*, 4 N. H., 562; *Amherst v. Hollis*, 9 N. H., 108; 10 Gray, 472; *Emery's Case*, 107 Mass., 173; 114 id., 286; *Maloney v. Bartley*, 3 Campb., 210; *French v. Venneman*, 14 Ind., 282; 4 Mich. (Gibbs), 423; *Re Graham*, 8 Benedict, 420. 4. The same reasons which excuse a witness from answering criminating questions protect him from being obliged to produce criminating documents. Starkie on Ev., 6th Am. ed., 87 and notes; id., 8th Am. ed., with notes by Sharswood, pp. 110–12; *Amey v. Long*, 9 East, 473, 485; *Bull v. Loveland*, 10 Pick., 14; *U. S. v. Reyburn*, 6 Pet., 367; *Byass v. Sullivan*, 21 How. Pr., 53; *U. S. v. Three Tons Coal*, 6 Biss., 379; *Bellinger v. The People, People v. Hackley*, and *In re Graham, supra;* 1 Greenl. Ev. (13th ed.), § 193 and notes. 5. The court will not punish a witness for contempt without evidence that the testimony refused is *material*, and such as the party is entitled by law to demand. *In re Judson*, 3 Blatchf., 151; 1 Greenl. Ev., § 319. The only libel charged in the complaint is alleged to have been contained in a report sent by one Reed "in the month of December, 1877;" and the only pertinent and proper question was, whether the witness had in his possession, or in the office of the mercantile agency, this particular report. No other would be competent evidence under the complaint. 1 Greenl. Ev., §§ 56–58, 63–65; 3 id., § 167; *Strader v. Snyder*, 67 Ill., 404; *Adams v. Kelly*, 21 E. C. L., 403; *Comm. v. Varney*, 10 Cush., 404; *Wolfe v. Goulard*, 15 Abb. Pr., 336. Courts do not favor mere fishing inquiries, such as this evidently

was. *Morgan v. Morgan*, 16 Abb. Pr., N. S., 296. As the order appealed from directs imprisonment until *all* the questions are answered, it must be reversed if any one of them is incompetent, immaterial or criminating. 6. The report alleged in the complaint for libel to have been made ·to the commercial agency, was a privileged communication, having been communicated in strict privacy, in the course of a lawful employment, by a trusted agent, to his principal *(Ormsby v. Douglass*, 37 N. Y., 479; *Knowles v. Peck*, 42 Conn., 397); and for this reason, also, no answer to the questions propounded should have been required. *In re Judson*, *supra*. 7. The court, without attempting to impose any fine, exercised the power of requiring the appellant to pay the "costs and expenses of the proceeding" (R. S. 1858, ch. 149, sec. 22; R. S. 1878, sec. 3490); but in so doing it erred in allowing $150 for counsel fees. It had no power to include under this head anything beyond the *taxable costs*. *Sudlow v. Knox*, 7 Abb. Pr., N. S., 419; *In re Jacobs*, 49 How. Pr., 372. As appears by the latter case, this error makes the whole commitment void.

The contentions in *Mr. Finch's* brief are, 1. That the complaint against Reed does not state a cause of action for want of proper averments either of malice or of special damages; and that all questions put to the witness were for that reason immaterial. 2. That the books and papers asked for belong to Dun & Co., who own the commercial agency. The appellant has no right to use them, except as he uses them in the business of Dun & Co. The clerk of a bank cannot be compelled to produce the books of the bank on subpœna; nor can the solicitor and secretary of a railway corporation be compelled to produce its books, when forbidden by the corporation. Moreover, Dun & Co. are not parties to this proceeding. The production of these books and ·papers may involve great trouble and loss to them; and before such production is ordered, they should have an opportunity to be heard. Their

clerk should not be required to produce their books without their knowledge or consent. Nor should he be required to produce books which are not properly speaking under his control; and they are not under his control when the owner may forbid their removal or place them beyond the reach of the witness. And it is almost certain that the *subpœna duces tecum* would be no justification to the servant or employee for removing the books of his employer, when such employer is not a party to the suit. *Att'y Gen. v. Wilson*, 9 Simons, 526; *Lee v. Angas*, L. R., 2 Eq., 59; *Crowther v. Appleby*, L. R., 9 C. P., 23; *Airey v. Hall*, 12 Jur., 1043; *Bank of Utica v. Hillard*, 5 Cow., 158; *Opdyke v. Marble*, 18 Abb. Pr., 270. 3. That it is at least true that Dun & Co. can legally, at any time, dismiss this witness from their service, or remove these books and papers from his possession, and he will be powerless to produce them. And the order of commitment is therefore invalid because it requires the appellant to be confined until he shall perform an act thus out of his power. *Wartman v. Wartman*, Taney, 373. 4. That the order should also be reversed because it requires the production of all the reports with regard to the plaintiffs made during 1877, and is not confined to the report alleged in the complaint. *Stalker v. Gaunt*, 12 N. Y. Leg. Obs., 124; *France v. Lucy*, Ryan & M., 341; *Jones v. Edwards*, 1 McC. & Y., 139.

The cause was submitted for the respondents on briefs of *Markhams & Smith:*

1. The appellant's refusals to answer, etc., were properly certified to the circuit court for Fond du Lac county; and after a hearing upon its order to show cause (R. S., § 3480; *Poertner v. Russel*, 33 Wis., 193), that court, having adjudged the appellant guilty of the misconduct alleged, and that this impeded and prejudiced the remedies of the plaintiffs, had power to make the commitment. Sec. 4066, R. S., has no application to a court commissioner taking testimony in a case pending in court. But even if the commissioner had power

to commit, under the statute, this would not deprive the court of that power. *Wickes v. Dresser,* 4 Abb. Pr., 93; *Kearney's Case,* 13 id., 459; *Hilton v. Patterson,* 18 id., 245; *People v. Brennan,* 45 Barb., 344; *Gould v. Dodge,* 30 Wis., 621; Const. of Wis., art. VII, sec. 8, and art. XIV, sec. 13; R. S., sec. 3477. That court had original jurisdiction in the libel suit, with power to issue all writs necessary to carry into effect its orders, judgments or decrees. Const., art. VII, sec. 8. It has general jurisdiction to commit for contempt a witness refusing to testify in an action or proceeding pending in the court (R. S., sec. 3477, subd. 5); and this though the evidence be not taken in the presence of the court. *Haight v. Lucia,* 36 Wis., 361; *State ex rel. Mann v. Brophy,* 38 id., 426; *Stuart v. Allen,* 45 id., 161; *Lee v. Dunlop,* 15 id., 391; *In re Remington,* 7 id., 643; *Giesse v. Beall,* 5 id., 229; *Nieuwankamp v. Ullman,* 47 id., 168. The jurisdiction of each circuit court is coëxtensive with the boundaries of the state, for the enforcement of its decrees or writs, and it requires no assistance from any other court. Its subpœna runs to any part of the state, and it may punish a disregard thereof as a contempt. Jurisdiction of a particular controversy is the power to hear and determine it; and when one is charged with violating the decree of a court, no other court than the one which rendered the decree can hear and determine the controversy or punish the contempt. *Phillips v. Welch,* 12 Nev., 158; *Shattuck v. The State,* 51 Miss., 50; *Wickes v. Dresser, supra.* In *State v. Brophy, supra,* the court of one county punished the sheriff of another county for contempt for acts done in the sheriff's own county, in a case pending in such court. If a witness may be subpœnaed from any portion of the state to appear before the circuit court for a given county (R. S., sec. 4053), certainly, in case he refuses to attend, the court must have power to bring him before it and punish his disobedience; and in such case there is no legal reason why he may not be committed to the jail of the county in

The State ex rel. Lanning and another vs. Lonsdale.

which the court sits. R. S., sec. 4945. 2. Sec. 3490, R. S., pro-vides for imposing upon the person in contempt payment to the injured party of a sum sufficient "to indemnify him, and to satisfy his costs *and expenses.*" It has repeatedly been held that even when there is no other actual loss proved than costs and expenses of the proceeding, these should be paid. *Double-day v. Sherman*, 8 Blatchf., 45. And there was no error in including $150 for the fees of plaintiffs' counsel, for arguing the order to show cause, etc. The intimation in *Sudlow v. Knox*, 4 Abb. Dec., 326, cited to the contrary, is a mere dic-tum, and is at least inapplicable to the laws of this state. What is sought to be given is actual indemnity for all the ex-penses actually resulting to the relator from the defendant's misconduct; and this must include any sum which the relator's counsel could recover of him for services in the proceeding. See *Downing v. Marshall*, 37 N. Y., 380. Where do our statutes itemize or specify any costs for attorney's fees, except where, in an action at law, judgment is rendered in favor of the successful party for a fixed sum on an issue duly found? In a *quasi* criminal proceeding like this, there is no specific statutory provision for expenses of any kind; and, unless allowed by way of indemnity, nothing can be recovered. *Crocker v. Supervisors*, 35 Wis., 286. A proceeding for con-tempt is entirely distinct from the action in which the con-tempt was committed; as much so as an indictment for perjury is from the cause in which the perjury was committed. *Re Williamson*, 26 Pa. St., 9. And even if the "costs" are to be determined by reference to the statutory fee bill of officers, how does this satisfy the provision for all "expenses?" *Peo-ple v. Crompton*, 1 Duer, 512; *Davis v. Sturtevant*, 4 id., 148; *S. C.*, 5 Seld., 263; *Doubleday v. Sherman*, 8 Blatchf., 45; *Ross v. Clussman*, 3 Sandf. S. C., 683; *Thompson v. Tay-lor*, 72 N. Y., 32; *Gear v. Shaw*, 1 Pin., 608; *Bonesteel v. Bonesteel*, 30 Wis., 511; 6 Wait's Pr., 155. 3. The order will not be reversed on the ground that the unanswered ques-

tions were immaterial. (1) The objection is taken here for
the first time, and is not assigned for error. *Cottrill v. Cra-
mer*, 46 Wis., 488. (2) It was for the court, and not for the
witness, to determine the materiality of the questions. (3) In
3 Blatchf., 151, there was no evidence before the court that
there was any issue whatever in the case, and no information
as to the nature of the controversy or the contents of the plead-
ings. Greenleaf (vol. 1, § 319) merely states that "if it
*appears* that the testimony of the witness *could not have been*
material, a rule for an attachment will not be granted; " and
this is the extent of the decision in *Dicas v. Lawson*, 1
Crompt., M. & R., 933. There is no ground for assuming in
this case that the evidence sought was wholly immaterial.
The questions were all proper ones, either because the answers
might have been directly material, or because they were a
proper introduction or inducement to material questions.
2 Evans's Pothier, 296; *Johnston v. Hamburger*, 13 Wis.,
175. It is no objection that the questions and the *subpœna
duces tecum* were not limited to a single report made by Reed
in December, 1877. In a civil action for a libel, time is not
an essential averment, and a variance in that respect is not
fatal. Townshend on Libel, § 376; *Richardson v. Roberts*,
23 Ga., 215; *Wright v. Britton*, 1 Morris (Iowa), 286. Other
libels than those set out in the complaint are also admissible
to show express malice. Townshend, § 394. 4. The objection
that the appellant is a mere clerk and not the owner of the
books, was not made by him, and he cannot be heard here to
insist on rights not strictly personal and claimed in the court
below. Starkie on Ev. (Sharswood's ed.), 110–11; *Chaplain
v. Briscoe*, 5 Sm. & M., 198. Besides, his testimony showed
that he was not a mere clerk, but the sole representative of
the agency in this state. The court was the judge of the
reasonableness of *his* excuse. *Bull v. Loveland*, 10 Pick., 14.
It was admitted that the books were under his control and in his
possession; and in such case he must ordinarily produce

AUGUST TERM, 1879.        361

The State ex rel. Lanning and another vs. Lonsdale.

them in obedience to the subpœna. *Amey v. Long*, 9
East, 473; *Corsen v. Dubois*, 1 Holt's N. P., 239. When
examined and declining to produce the papers, he may
still be compelled to give general evidence of their
contents. Starkie, 112; *Earl˙ of Falmouth v. Moss*, 11
Price, 455; *Lynde v. Judd*, 3 Day, 499; *Durkee v. Leland*,
4 Vt., 612. The only exceptions recognized by the au-
thorities are inapplicable here. Starkie, 111; 1 Greenl., 12th
ed., § 558, note 4. 5. The witness's claim of privilege at the
time of his examination seems to have been based upon the
idea that the reports made to the agency were *confidential*.
But the question whether a particular writing is privileged
can be settled only by its production in court. *Wright v.
Woodgate*, 2 Cromp., M. & R., 573. It might show malice on
its face. 4 Wait's A. & D., 304–5. 6. Three weeks after his
first refusal, the witness objected that compliance with the
order of the commissioner would tend " to accuse him of a
crime or misdemeanor." But having voluntarily testified to
the existence of the agency, his own connection therewith, the
reports and communications from their agents, etc., it was
then too late to refuse to state the source of his knowledge, of
what the reports consisted, and from whom they came. A wit-
ness who has answered in part, stating facts which the court
can see may tend to convict him of crime, cannot then refuse to
answer as to other facts of the same nature which may equally
tend to criminate. *The State v. K.*, 4 N. H., 562; *Amherst
v. Hollis*, 9 id., 107; *State v. Foster*, 3 Fost., 348; *Coburn v.
Odell*, 10 id., 540; *Chamberlain v. Willson*, 12 Vt., 491;
*Low v. Mitchell*, 18 Me., 374; *Norfolk v. Gaylord*, 28 Conn.,
309; *Foster v. Pierce*, 11 Cush., 437, 439; *People v. Lohman*,
2 Barb., 216; 1 Greenl. Ev., § 451, 451 a, and cases there cited.
7. It is for the court to determine whether, under all the cir-
cumstances of the case, the question will call for a criminating
answer, and whether the witness shall be required to answer.
1 Greenl. Ev., as last above cited; Stephen's Dig. of the

Law of Ev., 137; 1 Burr's Trial, 245; 2 G. Greene (Iowa), 532; 2 Cow. Tr. (ed. of 1844), 444. And under all the circumstances of this case the court properly determined that the questions in this case, and the records called for, did not tend to criminate the witness. (1) The court might well doubt the good faith of the witness in making the objection so long after his refusal on a different ground, and then only on the advice of counsel, and without any declaration under oath. (2) If a production of the records should show that the agency had received a report such as is alleged in the complaint against Reed, this would not prove that the witness had given it further circulation. (3) Where the information given to a commercial agency is strictly confidential, and the information relating to one subscriber is communicated in good faith to other subscribers only, such communication is regarded as privileged, and is protected from the presumption of malice. *Ormsby v. Douglass*, 37 N. Y., 477, 480; *Flemming v. Newton*, 1 H. of L. Cas., 363; *Comm. v. Stacy*, 3 Phil. Leg. Gaz., 13; *Toogood v. Spyring*, 1 C., M. & R., 181. And the court cannot be asked to presume that the appellant, in a criminal prosecution against him for libel, will be shown to have acted in bad faith and with express malice; especially in view of his own clear evidence in this case to the contrary. *Stowell v. Eldred*, 26 Wis., 509; *Norris v. Denton*, 2 Cal., 378. Besides, after the witness had claimed privilege, and had been required by the court to answer, his answers, being compulsory, could not be used against him to convict him of a criminal charge. 1 Greenl. Ev., § 451; *Regina v. Garbett*, 2 C. & K., 474.

LYON, J. 1. The first question to be determined is, Has the circuit court for Fond du Lac county jurisdiction to punish the appellant for contempt, because of his refusal, when giving his deposition, to answer the interrogatories put to him, and to produce the correspondence required of him? Counsel for the appellant assert that the court commissioner taking the

deposition has power, under section 4066, R. S., to punish him for the alleged contempt, and they maintain that the jurisdiction to do so is exclusive.

If it be conceded that the power to punish for the contempt is conferred upon the commissioner, we are by no means satisfied that the same power may not be exercised by the court in which the action wherein the deposition was taken is pending, provided the commissioner, instead of punishing for the contempt, reports the facts to the court. But the view we take of the statute renders a determination of that point unnecessary.

Section 4066 reads as follows: "If any person, duly subpœnaed and obliged to attend as a witness before any officer, arbitrators, board, committee, or other person authorized to examine witnesses or hear testimony, shall without any reasonable excuse fail to attend or to testify, as lawfully required, or to produce a book or paper which he was lawfully directed to bring by subpœna, or subscribe his deposition when correctly reduced to writing, upon sufficient proof of the facts by affidavit, any judge of a court of record, or court commissioner in the county, may issue an attachment to bring such witness before him, and then, unless such witness shall purge the contempt and go and testify, or do such other act as required by law, may by warrant commit him to the common jail of the county, there to remain in close confinement until he shall so testify, or do such act, or be discharged by order of such judge or commissioner, or according to law."

In their note to this section the revisers say that it is "section 2, ch. 125, 1860, condensed." Turning to the act of 1860, we find that its provisions relate exclusively to witnesses and testimony in proceedings before municipal boards or bodies, or before committees appointed by them, and have no application whatever to witnesses or testimony in actions or proceedings pending in the courts.

The language of section 4066, although quite general,

furnishes support to the revisers' note: "If a person duly subpœnaed and obliged to attend as a witness before any *officer, arbitrator, board, committee,* or other person authorized to examine witnesses or hear testimony," shall fail to attend or testify, etc. No judicial tribunal or officer is here named, and the section contains no express mention of testimony taken to be used in a judicial proceeding in the courts. Moreover, the section confers jurisdiction upon a judge of a court of record, or a court commissioner, to attach the witness, only "upon sufficient proof of the facts by affidavit." This clearly contemplates a contempt committed in a proceeding before some tribunal or some person other than the judge or commissioner before whom the attachment proceedings are instituted. Had the legislature intended the section to include contempts by witnesses summoned to give depositions in judicial proceedings pending in our own courts, in view of the fact that such depositions are very frequently taken before court commissioners, it is fair to presume that the power to attach a contumacious witness would have been expressly given to the commissioner taking the deposition. It must be remembered that this is a penal statute, and, for that reason, must be strictly construed. Hence, notwithstanding some general words contained in it, as "officer," "other person," "deposition," and the like, it must be held that a judge or commissioner is not therein authorized to attach and punish a witness giving a deposition before him for refusing to answer proper interrogatories, if the deposition is being taken in a cause pending in a court of record of this state. A court commissioner is, however, authorized by statute (R. S., sec. 2433) to issue process of attachment to compel the attendance of witnesses who have been duly subpœnaed, in all cases in which he is authorized to take the depositions of such witnesses.

It should here be said that when the case of *Stuart v. Allen,* 45 Wis., 158, was decided, we all supposed that the late revision confers the power upon court commissioners to

punish for contempt in cases like this. Hence the statement to that effect at the close of the opinion. More careful consideration has satisfied us that we were in error. We are inclined to think that section 4109, R. S., operates to extend the provisions of section 4066 to proceedings against a witness summoned to give his deposition in a cause depending in another state or country, who refuses to answer all proper interrogatories. The law which compels the citizens of this state to give testimony in such cases is founded in comity; and such testimony is, so to speak, extra-judicial as to our courts. A witness who unlawfully refuses to testify in a foreign cause, although he violates a penal law and is liable to punishment therefor, commits no contempt of any court of this state. But inasmuch as the effect of section 4109 is not involved in this case, although we have thought best to suggest a construction of it, we do not definitely determine the proper procedure to enforce its provisions.

It is further maintained that, the alleged offense having been committed in Milwaukee county, the appellant cannot lawfully be punished therefor in Fond du Lac county. We think the position untenable. It is provided by statute that "every court of record shall have power to punish by fine and imprisonment, or either, any neglect or violation of duty, or any misconduct, by which the rights or remedies of a party in an action or proceeding depending in such court, or triable therein, may be defeated, impaired, impeded or prejudiced, in the following cases: . . . . 5. All persons summoned as witnesses or garnishees, for refusing or neglecting to obey such summons, or to attend, or to be sworn, or to answer as such witnesses or garnishees." R. S., 880, sec. 3477.

The refusal of the appellant to answer the interrogatories propounded to him, and to produce the required correspondence, may have impeded or prejudiced the relators in obtaining their rights and enforcing their lawful remedies in their action pending in the circuit court for Fond du Lac county

against Reed. If the interrogatories were proper, or if the correspondence should have been produced, such a refusal was in contempt, not of the authority of the commissioner, or any tribunal in Milwaukee county, but of the authority of the circuit court for Fond du Lac county. The commissioner was acting for that court, was engaged in the discharge of its functions; and the offense of the appellant, if he was guilty of an offense, consisted in contemning its authority by obstructing a regular and orderly proceeding in an action pending in that court. We think that county lines have no significance in such a case, but that the court wherein the action is pending may lawfully take action upon the report of the commissioner, and make such order in the premises as will vindicate the authority of the court and protect the rights of suitors therein, no matter in what county of the state the offense was committed. This is our reading of the statutes on the subject; and, in the absence of statutory provisions, we cannot doubt the court would have the same power under well established common-law principles.

2. We next proceed to inquire whether the order from which this appeal is taken is authorized by law. The order does not purport to impose punishment for a criminal contempt, but it gives indemnity to the relators by way of damages for injury or loss produced by the alleged misconduct of the appellant. Its validity depends upon sections 3490 and 3491 of the late revision, which are the same as sections 21 and 23, ch. 149, R. S. 1858. Unless the order can be sustained under these sections, it is irregular. For, whatever view may be taken of the inherent power to inflict criminal punishment for contempts, independently of the statute, it will not be claimed that the court may, without the authority of the statute, award indemnity to an injured party in a summary proceeding as for a contempt.

The construction and scope of the above sections were determined by this court, upon much deliberation, in *Re Ida*

*Louisa Pierce,* 44 Wis., 411. In the opinion in that proceeding, it is said of those sections: "It is very clear that the 'loss or injury' of the statute is a pecuniary loss, or injury to rights for which compensation may be made in money; a loss or injury which would entitle the injured party to maintain an action against the offender to recover damages for his misconduct. This is made apparent by the last clause of section 21, which renders the payment of the indemnity a bar to such an action." The court adheres to the construction which it there gave to the statutes concerning contempts; and while it freely concedes, what it never questioned or doubted, that the power to punish for contempt was not conferred in the first instance by statute, but inheres in the court, it holds that whenever a statute prescribes the procedure in a prosecution for contempt, or limits the penalty, the statute controls.

The question arises, therefore, Can the relators maintain an action against the appellant to recover damages resulting from his refusal to answer the interrogatories put to him, and to produce the required correspondence?

Section 4063, R. S., gives, or at least recognizes, a right of action by the aggrieved party against a person duly subpœnaed as a witness and obliged to attend, who fails to do so without reasonable excuse, to recover the damages occasioned by such failure. But neither the statute nor any adjudged case that has come to our notice, recognizes such right of action against a witness for refusal to answer proper questions. It may be, however, that in special cases such an action can be maintained on common-law principles. But it seems to us it can only be maintained (if at all) for some special damage resulting from the unlawful refusal of the witness to testify. For example, such refusal might compel a party to take a continuance on terms. The continuance costs would probably be the measure of damages. If such an action can be maintained in any case, we think the recovery will be limited to the actual, direct, tangible damages; and that the mere refusal to testify, unac-

companied by such damages, is not a ground of action. And we think, also, that no recovery can be had in such an action, based upon the possibility or probability that, had the witness testified fully, the judgment would have been more favorable to the aggrieved party than it was. Such damages are altogether too uncertain and conjectural to furnish a ground of action.

In this proceeding it does not appear that the relators suffered any special pecuniary loss or injury by reason of the alleged misconduct of the appellant. The order gives them indemnity only to the extent of their expenses in prosecuting the contempt proceedings. Had the proceeding resulted in punishment for a criminal contempt, it seems certain that the relators could not recover such expenses in an action against the appellant.

In whatever aspect we view the case, we are unable to find in it any feature which brings it within the statute authorizing the court in such proceedings to adjudge indemnity to the aggrieved party instead of imposing a fine upon the offender. We must hold, therefore, that the order is unauthorized by law, and for that reason it must be reversed.

3. The ground upon which the appellant refused to answer was, that his answers might tend to accuse him of crime and subject him to a penalty; that is to say, they might tend to show that he had been guilty of publishing or circulating a libelous document, which is a misdemeanor. The rule of law on this subject was stated by Dixon, C. J., in *Kirschner v. The State*, 9 Wis., 140, as follows: "Although the witness is the judge of the effect of his answer, and is not bound to disclose any facts or circumstances to show how the answer would affect him, as that would defeat the rule and destroy the protection afforded by the law, yet the court is to determine, under all the circumstances of the case, whether such is the tendency of the question put to him, and whether he shall be required to answer; as otherwise it would be in the power of

every witness to deprive parties of the benefit of his testimony by a merely colorable pretense that his answers to questions would have a tendency to implicate him in some crime or misdemeanor, or would expose him to a penalty or forfeiture, when it is clear, as we think it was in this case, that the questions have no such tendency."

We do not think it proper to pass definitely upon the character of the communication which is charged to be libelous, or to say whether or how far it is privileged as respects Mr. Reed. These are questions which should regularly be determined in the libel suit. For the purposes of this appeal we are inclined to think that it was conditionally privileged in the hands of the appellant or his principals, and that they might lawfully make known its contents confidentially to their subscribers seeking information of the financial standing of the relators, provided they did so in good faith — that is, without malice and in the belief that the statements therein contained were true.

There is nothing in the record before us tending to show that the appellant has made known the contents of this communication to any person other than the subscribers of the agency; and the fidelity with which he has guarded and kept the secrets of the agency in this proceeding is strong evidence that he has not. In order to hold that the answers of the appellant (provided he answers that he has the communication charged to have been made by Reed to the agency, and produces it) will or may tend to expose him to a criminal charge, we must assume that he has made an improper use of the communication. We do not perceive how we can so assume on this record, when there is not the slightest evidence of the fact, and when all reasonable probabilities are against it.

It is not deemed necessary to enlarge on this subject, because another effort to obtain the required testimony may disclose an entirely different state of facts.

4. It is deemed advisable to state briefly what we regard

the proper practice in cases of this kind, and the statement will disclose another irregularity in this proceeding.

When the officer taking the deposition of a witness to be used in an action pending in a court of record of this state, reports to the court in which such action is pending, that the witness has refused to answer certain interrogatories propounded to him, the court should, on application of the aggrieved party, grant an order that the witness show cause why he should not be required to answer such interrogatories. On the return of the order, if the witness does not admit his refusal to answer, proper interrogatories in that behalf should be served upon him. If it appear by his admission, or by his answer to the interrogatories, or by proof, that he has so refused, the court will decide whether he ought to answer the questions which he has refused to answer; and if it is held that he ought, the court will make an order requiring him to go before the officer and make answer thereto; and in such case the court in its discretion may impose upon him the costs of the proceeding. For disobedience to such order the court should, on proper proceedings, punish the witness as for a criminal contempt.

The practice here indicated prevails in courts of equity, and does not seem to contravene the provisions of any statute. It is also eminently just to the witness. *Bradshaw v. Bradshaw*, 1 Russ. & Mylne, 358; 2 Dan. Ch. Pl. & Pr., 891, and cases cited; *Stuart v. Allen*, 45 Wis., 158.

Other questions were argued by counsel, but we do not find it necessary to determine them. Those already determined are decisive of this appeal.

*By the Court.* — Order reversed.