STATE, Respondent, v. BALISTRIERI, Appellant.

*No. 101. Argued September 5, 1972.—Decided October 3, 1972.*
(Also reported in 201 N. W. 2d 18.)

514

516

For the appellant there was a brief by *Joseph P. Balistrieri*, attorney, and *Dominic H. Frinzi* of counsel, both of Milwaukee, and oral argument by *Mr. Balistrieri.*

For the respondent the cause was argued by *Thomas A. Hendrickson,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

HEFFERNAN, J. Balistrieri's principal contention is that the alleged contempt was civil in nature and could only have been brought under ch. 295, Stats. Particular emphasis is placed upon the court's failure to follow the procedures of sec. 295.12. That section of the statute, if applicable, requires, unless the defendant admits the facts charged, that interrogatories be filed specifying the facts and circumstances of the alleged contempt.

We conclude that ch. 295, Stats., is inapplicable.

Sec. 295.01, Stats., provides that a court of record or a judge of a court in chambers shall have the power to punish for contempt:

". . . any misconduct by which the rights or remedies of a party in an action or proceeding pending or triable in such court or before a court commissioner for the same county may be defeated, impaired, impeded or prejudiced . . . ."

In this case, contemptuous misconduct occurred in an administrative proceeding. There was no action or proceeding either pending or triable in any court. The contempt alleged here was not a judicial contempt. It was a contempt committed by a refusal to comply with a subpoena of an administrative agency.

Sec. 885.12, Stats., provides that the failure to attend as a witness before a board, commissioner, examiner, etc., to testify as required or to produce a book or paper, unless there be a reasonable excuse, constitutes contemptuous behavior. This statute contemplates that, though the alleged contempt be committed before the administrative agency, the opportunity to purge the contempt is available in a court, and punishment for the contempt is imposable only in a court proceeding. The

plain meaning of the statute is set forth when it recites that the trial court:

"... may, upon sworn proof of the facts, issue an attachment for him, and unless he shall purge the contempt ... may commit him to close confinement in the county jail ...."

Judicial contempts and their punishment are embraced in ch. 295, Stats. A contempt alleged to have been committed in an administrative proceeding is properly reviewed and, if appropriate, punished by court procedures under sec. 885.12.

The distinction between the two statutes is pointed out in *State ex rel. Lanning v. Lonsdale* (1880), 48 Wis. 348, 4 N. W. 390, where an attempt was made to punish a judicial contempt by a proceeding under sec. 4066, Rev. Stats. 1878, which, with minor exceptions, is identical to present sec. 885.12. The court said at page 364:

"No judicial tribunal or officer is here named, and the section contains no express mention of testimony taken to be used in a judicial proceeding in the courts. Moreover, the section confers jurisdiction upon a judge of a court of record, or a court commissioner, to attach the witness, only 'upon sufficient proof of the facts by affidavit.' This clearly contemplates a contempt committed in a proceeding before some tribunal or some person other than the judge or commissioner before whom the attachment proceedings are instituted. Had the legislature intended the section to include contempts by witnesses summoned to give depositions in judicial proceedings pending in our own courts ... it is fair to presume that the power to attach a contumacious witness would have been expressly given to the commissioner taking the deposition."

Contempt of an administrative agency contemplated by sec. 885.12, Stats., is civil in nature inasmuch as the defendant may purge his contempt and accomplish his

own release. *Maggio v. Zeitz* (1948), 333 U. S. 56, 68 Sup. Ct. 401, 92 L. Ed. 476. The procedure is nonetheless that described in sec. 885.12. *See also: State ex rel. St. Mary's Hospital v. Industrial Comm.* (1947), 250 Wis. 516, 520, 27 N. W. 2d 478, wherein this court stated that a person served with a subpoena duces tecum by the industrial commission, "must either furnish the records requested or be subject to the procedure imposed by secs. 102.17 (3) and 352.12 [now appearing as sec. 885.12], Stats."

The defendant relies upon *State v. Marcus* (1951), 259 Wis. 543, 49 N. W. 2d 447, for the proposition that, in Wisconsin, administrative officers have no power to punish contempts committed against them while acting in their administrative capacity. While that proposition is correct, it is inappropriate to a situation where, as here, a judicial tribunal is authorized by statute to impose punishment for a contempt committed before an administrative agency.

Defendant argues that sec. 295.12, Stats., should have been employed because it requires the filing of interrogatories. Even under sec. 295.12, however, the defendant is not entitled to interrogatories unless he demands them. *Upper Lakes Shipping v. Seafarers' International Union* (1964), 23 Wis. 2d 494, 128 N. W. 2d 73. Therein we said that, even under the procedures of sec. 295.12, the failure to demand interrogatories constituted "an intentional affirmative waiver of his rights under the relevant statutes." (P. 506.) In any event, interrogatories only serve to sharpen the issues when there is a dispute whether the defendant had in fact committed the conduct charged. Here, there was no factual dispute to be reconciled through the propounding and answering of interrogatories.

No element of due process was denied in these proceedings. The defendant was given notification seven-

teen days before the administrative hearing that he would be required to produce certain records and that failure to do so could result in contempt proceedings being brought under sec. 885.12, Stats. Balistrieri's attorney acknowledged that, from the time the subpoena was served, he and his client were relying upon the fifth amendment to avoid the production of records. It can hardly be said that a defendant with counsel who has expressed that from the outset he was placing reliance upon a particular defense can now be heard to state that he was caught unprepared or that the writ of attachment was issued without reasonable notice. Additionally, the circuit court adjourned the matter for further hearing on the following day, but no legal defenses were further argued or raised on that occasion.

The defendant's brief appears to claim that he was punished for contempt because he had refused to testify after the invocation of his alleged fifth-amendment privilege. The record, however, shows that the only reason for the imposition of the finding of contempt was Balistrieri's failure to turn over the subpoenaed records in the tax department proceedings.

The fifth-amendment privilege does not attach to the records of a corporation. *United States v. Kordel* (1970), 397 U. S. 1, 7, 90 Sup. Ct. 763, 25 L. Ed. 2d 1; *Brussel v. United States* (1969), 396 U. S. 1229, 1230, 90 Sup. Ct. 2, 24 L. Ed. 2d 53; *Curcio v. United States* (1957), 354 U. S. 118, 122, 77 Sup. Ct. 1145, 1 L. Ed. 2d 1225; *United States v. White* (1944), 322 U. S. 694, 699, 64 Sup. Ct. 1248, 88 L. Ed. 1542; *Hale v. Henkel* (1906), 201 U. S. 43, 75, 26 Sup. Ct. 370, 50 L. Ed. 652.

When books and records are kept in a representative capacity, as here, where Balistrieri was the secretary-treasurer of the corporation, the privilege does not attach even though the production of the papers could tend to

incriminate their custodian personally. *Rogers v. United States* (1951), 340 U. S. 367, 372, 71 Sup. Ct. 438, 95 L. Ed. 344. In *Curcio, supra,* the United States Supreme Court stated that:

"A custodian, by assuming the duties of his office, undertakes the obligation to produce the books of which he is custodian in response to a rightful exercise of the State's visitorial powers." (Pp. 123, 124)

They may not be withheld on the ground that the documents might personally incriminate him. *Curcio, supra,* page 122.

The question, then, is simply one of the sufficiency of evidence. Did Balistrieri have "reasonable excuse" to justify his failure to produce the books and records required. He argues that the contempt cannot stand because there was no evidence that he ever had the books and records in his possession when he was subpoenaed or that he ever was the custodian of the requested documents.

It is true that a person cannot be punished for contempt for failing to comply with an impossible order. In this case, however, Balistrieri admitted that he had been secretary-treasurer of the corporation for several years. Under Wisconsin law the defendant was the legal custodian of the corporation's books and records. *In re Adam's Rib, Inc. (Kaminsky)* (1968), 39 Wis. 2d 741, 747, 159 N. W. 2d 643, points out that, under these circumstances:

"The burden was not upon the respondents to prove the appellant could comply with the order of the court. It was, at this point in the proceeding, incumbent upon the appellant to offer some satisfactory explanation of his failure to comply with the court's specific and direct order. Appellant offered nothing other than his own denial to show he did not have possession of the records and a statement that others had used the records at various times."

The trial court made the finding that the defendant had given evasive answers to inquiries on the stand and had made "no honest, fair, good faith effort to purge himself of the contempt." Once the link was established between the corporation and the defendant as the legal custodian of the records, the burden of showing a reasonable excuse for their nonproduction fell upon Balistrieri.

In *In re Adam's Rib, Inc. (Kaminsky), supra,* we pointed out that the findings of fact in a civil contempt proceeding are conclusive unless contrary to the great weight and clear preponderance of the evidence. In the instant case, the defendant was able to produce a number of the requested records when the proceedings were resumed on the morning of November 11, 1969. Following the noon recess, he produced still additional records. In *In re Adam's Rib, Inc. (Kaminsky), supra,* page 747, we said that the production of a portion of the records supported the inference that it was within the power of the contemnor to produce the balance of them.

The trial judge concluded that the defendant's testimony was evasive and contradictory. The trial judge, as the trier of the fact, could properly conclude that the conduct of the defendant and his mode of testifying made his denials incredible.

The defendant had been in contact with the bookkeeper the night before, and it is highly likely that she would have been available to testify if any of the records had been destroyed or lost while in her possession. The defense made no attempt to assume its burden to explain the nonproduction of these documents. On the other hand, the testimony of special agent Murphy, which indicated that the corporation had in its income tax returns been making claims for deductions for the amortization of capital expenditures, could lead only to

the inference that the underlying subpoenaed documents existed.

The trial court's finding that the defendant without reasonable excuse failed to produce the subpoenaed documents is not contrary to the great weight and clear preponderance of the evidence.

*By the Court.*—Judgment and order affirmed.