STATE of Wisconsin, Plaintiff-Respondent,

v.

Carl H. KIELISCH, President AABREC, Inc., Defendant-Appellant.†

Court of Appeals

*No. 84–537. Submitted on briefs November 12, 1984.—
Decided February 5, 1985.*
(Also reported in 365 N.W.2d 904.)

† Petition to review denied.

126

For the appellant the cause was submitted on the briefs of *James R. Long*, of Appleton.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Matthew Frank,* assistant attorney general, assisted by *Laura Schuett,* law clerk.

Before Cane, P.J., Dean and LaRocque, JJ.

CANE, P.J.  Carl Kielisch appeals a circuit court order denying his motion to quash a subpoena duces tecum issued to him by the Wisconsin Department of Revenue. The order also granted the state's motion to find Kielisch in contempt for failing to comply with the court's previous order for him to turn records over to the department until the department completes a tax investigation. Kielisch argues that the subpoena should be quashed because the state did not pay his witness fees prior to the return date of the subpoena, and because disclosure of the requested records may violate his constitutional privilege against self-incrimination. He also contends that he complied with the subpoena when he offered to allow the department to copy the requested records. We affirm that part of the order that refused to quash the subpoena because the state does not have to pay witness fees in advance, and because the privilege against self-incrimination does not attach to corporate records. We reverse the finding of contempt, however, because the court exceeded its authority by ordering Kielisch to turn the records over to the department until it completed its investigation.

The department subpoenaed corporate records from Kielisch for examination relating to an investigation of tax liability. Kielisch did not appear on the return date of the subpoena, and he did not otherwise produce the requested records. The department then commenced an attachment proceeding to enforce the subpoena. Kielisch appeared at the enforcement proceeding with the requested records. The circuit court ordered him

to turn the records over to the department by 5 p.m. of the day of the order. The court refused to order the department to copy the records because the court did not believe that it had such authority. The court stated that the department could keep the records until it completed its investigation. The court granted the department's motion to find Kielisch in contempt when he did not turn the records over by the 5 p.m. deadline.

## WITNESS FEES

The state was not obligated to pay Kielisch's witness fees prior to the return date of the subpoena. Section 885.06(2), Stats., expressly provides that no witness on behalf of the state shall be entitled to any fee in advance, but shall be obliged to attend a proceeding upon service of a subpoena. Kielisch argues that this statute is not applicable to him because he is not a witness "on behalf of the state." He contends that he is a hostile witness. A witness on behalf of the state, however, is not necessarily a friendly witness. *See* sec. 906.11(3), Stats., and sec. 972.09, Stats., which permit parties to call adverse witnesses in civil and criminal actions. A witness subpoenaed on behalf of the state is one who is expected to provide relevant testimony or evidence for the state.

## SELF-INCRIMINATION

The fifth amendment privilege against self-incrimination does not attach to the records of Kielisch's corporation. *See State v. Balistrieri,* 55 Wis. 2d 513, 522, 201 N.W.2d 18, 23 (1972). Kielisch contends that the subpoenaed corporate records may incriminate him be-

cause the department is investigating his personal tax liability. The privilege does not attach, however, because Kielisch kept the records in a representative capacity. *Balistrieri*, 55 Wis. 2d at 522–23, 201 N.W.2d at 23. When the records of a separate legal entity such as a corporation are subpoenaed, the privilege against self-incrimination does not attach even though the records may incriminate the custodian personally. *Id.*; *Bellis v. United States*, 417 U.S. 85, 90 (1974). Only personal tax records are protected by the privilege. *See B.M. v. State*, 113 Wis. 2d 183, 191–92, 335 N.W.2d 420, 424 (Ct. App. 1983) ; *see also United States v. Doe*, —— U.S. ——, ——, 104 S. Ct. 1237, 1240 (1984) (records of unincorporated sole proprietorship protected by privilege).

## AUTHORITY OF SUBPOENA

The most difficult issue in this case is whether the department may take indefinite possession of subpoenaed records. Kielisch contends that the department must examine the records at the return site of the subpoena and immediately copy the records that it wishes to retain. The department claims that it can keep the original records until it completes the investigation of Kielisch. We conclude that a subpoena duces tecum provides no independent authority to disturb the possession of records, except to permit examination and copying. Our holding does not limit the inherent authority of judicial and quasi-judicial bodies to take possession of subpoenaed records during their adjudications.

The department claims the right to take possession of the subpoenaed records by analogizing to federal grand jury procedure. The issue of whether a subpoena duces tecum authorizes retention of records has frequently arisen in the grand jury context. The prevail-

ing rule in the federal courts is best summarized in *Robert Hawthorne, Inc. v. Director of Internal Revenue,* 406 F. Supp. 1098, 1130 (E.D. Pa. 1976), where the court stated:

We hold that the grand jury . . . may retain the plaintiff's original documents while they are performing their lawful criminal investigatory functions, so long as the plaintiff's legitimate business need for the documents is at all times accommodated in some reasonable way. When the legitimate, good faith, criminal investigatory use of the documents has ended, however, or when the grand jury is discharged without the . . . [investigations] having been resubmitted or scheduled for resubmission to a new grand jury, then all the original subpoenaed materials must be returned immediately to their owner, the plaintiff. Subpoenaed documents may only be retained after this time, for whatever purpose, on the authority of a judicial order of impoundment, duly applied for by the government.

The rationale of the court's decision was based on the government's practical need to examine records before presenting evidence to the grand jury. *See id.* at 1131.

Kielisch contends that the authorities that permit grand juries to take possession of subpoenaed records misconstrue the authority of the subpoena duces tecum. He argues that a subpoena only requires that the records be brought to the directed return site. One of the most forceful decisions adopting this position is *Heisler v. Hynes,* 366 N.E.2d 817 (N.Y. 1977). In that decision, New York's highest court discussed the power of a subpoena to disturb the possession of records:

Its function is to cause the physical evidence to which it is directed to be brought before the court. It is not intended to deprive its custodian of control which is compatible with its production. So "[o]bedience to the subpoena will be complete when the books called for are presented to the grand jury in an actual session, and

are taken away . . . as soon as the particular session adjourns."

*Id.* at 819.

We are persuaded that there is some merit to the arguments of both the department and Kielisch, although neither is wholly correct. Adjudicative bodies, including courts, quasi-judicial administrative tribunals, John Doe judges,[1] and grand juries, may retain possession of subpoenaed records in adjudicative proceedings. The authority of judicial bodies to take possession of records, however, is not derived from the subpoena duces tecum. Judicial bodies have inherent authority to take possession of subpoenaed records for use in decision-making.[2] This source of the authority to retain records assumes critical importance when records are subpoenaed before a nonadjudicative body.

The intelligence section of the department of revenue, which subpoenaed Kielisch's records, is not a quasi-judicial body. In *State v. Beno,* 99 Wis. 2d 77, 88, 298 N.W.2d 405, 411–12 (Ct. App. 1980), this court described the functions of the intelligence section of the department. We stated that the intelligence section investigates suspected violations of income, sales, and excise tax laws. When an investigation is completed, the intelligence section refers the matter to the audit bureau of the department for a determination of civil assessments. Although the intelligence section may refer a matter to prosecuting authorities, it does not assist the prosecution.

---

[1] In *State v. Washington,* 83 Wis. 2d 808, 823, 266 N.W.2d 597, 605 (1978), our supreme court decided that John Doe judges perform an essentially judicial function. Similarly, grand juries perform judicial duties.

[2] Judicial power extends beyond the power to adjudicate a particular controversy and encompasses the power to regulate matters related to adjudication. *State v. Holmes,* 106 Wis. 2d 31, 44, 315 N.W.2d 703, 709 (1982).

■
These functions of the intelligence section do not constitute it a quasi-judicial body because it makes no civil or criminal adjudications. Criminal prosecutions are conducted exclusively by the district attorney or the attorney general in circuit courts. Civil assessments made by the audit bureau of the department also do not involve adjudications because the department can collect the tax without resort to litigation. *See United States v. Baggot,* —— U.S. ——, ——, 103 S. Ct. 3164, 3167–68 (1983). The taxpayer must initiate a formal administrative proceeding before the tax appeals commission in order to contest an assessment. *See* sec. 73.01, Stats. The department is not a quasi-judicial body, therefore, and it lacks inherent authority to take possession of subpoenaed records.

■
The department's subpoena power also does not give it authority to take indefinite possession of records. Because the department does not conduct quasi-judicial proceedings, it exercises its subpoena power as a discovery tool, rather than to compel evidence for use at a hearing. Discovery subpoenas are provided for in Wisconsin civil actions by sec. 804.05(3)(a), Stats. That statute clearly provides that subpoenaed records do not have to be indefinitely turned over to the party seeking discovery. The subpoena only requires records to be produced to permit inspection and copying. Section 804.06(7)(b), Stats., reenforces this conclusion by expressly authorizing the return of subpoenaed records after the person producing the records makes them available for inspection and copying. While the rules of civil procedure are not directly applicable to the department's investigations, we believe they support the conclusion that a subpoena does not authorize the indefinite transfer of records.

Our refusal to broadly construe the department's subpoena power is grounded in our concern to prevent unreasonable seizures. In *Hale v. Henkel*, 201 U.S. 43, 76 (1906), the United States Supreme Court held that the constitutional prohibition against unreasonable searches and seizures applied to a subpoena duces tecum. Subpoenas have generally been attacked as being overbroad unduly burdensome. *See* sec. 805.07(3), Stats., which authorizes judges to quash an unreasonable or oppressive subpoena duces tecum. We believe, however, that seizure of records for an unreasonable length of time may also violate constitutional protections.

Here, the department proposes to retain Kielisch's records until it completes its investigation. Because the investigation may not proceed quickly, the records may be retained for a considerable length of time. Unlike judicial or quasi-judicial proceedings, however, Kielisch is not in a forum where he can seek a protective order to guard against lengthy seizures. After surrendering the records, he can only recover them by commencing an independent action against the department. We do not believe Kielisch should have to go to such lengths to recover his records in the absence of express statutory authority. The department's subpoena power does not provide the necessary authority.

## POWER OF THE COMMISSION

■ No other statutory basis permits the department to take indefinite possession of subpoenaed records. Section 73.03, Stats., defines the powers and duties of the department. Subsection (9) provides that the department may summon witnesses to appear and give testimony and to produce records. We construe this subsection to give the department subpoena power. Sub-

section (20) authorizes the department to investigate delinquent tax liability. Pursuant to this authority, the department may take testimony and examine records bearing upon the suspected deficiency. We construe sub. (20) to permit discovery of relevant information. The right to discovery in a nonquasi-judicial proceeding, however, is not authority to take indefinite possession of records. Finally, sec. 71.11(20), Stats., also authorizes the department to compel the production of records for examination to verify income tax returns. Again, we do not construe "produce for examination" as authority to take indefinite possession of records. Our examination of the relevant statutory powers of the department, therefore, leads us to conclude that the department has no authority to hold Kielisch's records until it completes its investigation.

We recognize that tax investigations may require examination of voluminous records, and that the department has the right to examine the original of records to verify the accuracy of tax returns. Our conclusion that the department lacks authority to take possession of records, however, does not interfere with the department's exercise of its duties. The department may examine and copy records at the return site of its subpoenas. If examination and copying cannot be completed in one day, then the department may require the taxpayer to return on other days while it completes its work. Requiring the taxpayer to return several times during a lengthy examination may inconvenience the taxpayer; it does not prohibit the department from accomplishing its statutory duties. The taxpayer also may voluntarily turn his records over to the department for examination in order to avoid inconvenience. Finally, the department may examine voluminous records by using field examinations. *See* sec. 71.11(20), Stats. We

conclude, therefore, that the authority to take possession of records for more than a business day is not a necessary or implied power of the department.

## CONTEMPT FINDING

Kielisch had no duty to indefinitely turn his records over to the department, and he substantially complied with the subpoena duces tecum by offering the records for examination and copying. The circuit court ordered him to turn the subpoenaed records over until the department completed its investigation. This order exceeds the court's power to enforce the subpoenas duces tecum or any other power of the department. The order to indefinitely turn the records over to the department is therefore void. In *State v. Ramsay*, 16 Wis. 2d 154, 165, 114 N.W.2d 118, 124 (1962), our supreme court stated that failure to obey a void order is not punishable as contempt. We therefore reverse that part of the court's order finding Kielisch in contempt.

*By the Court.*—Order affirmed in part and reversed in part. Costs to appellant.