# DREW *v.* HOGAN.

---

CHURCHES; CONTEMPT OF COURT; RULES OF COURT; EQUITY PRACTICE; TEMPORARY INJUNCTIONS; WAIVER.

1. It would seem that, under the form of government applicable to Baptist churches, the control of the church property is lodged in the congregation or trustees of the church, and not in the deacons.

2. This court is inclined to follow the court below on all questions of fact relating to an alleged violation of restraining orders made by that court, where it is necessary for this court to consider them.

3. United States courts have no power to punish a party for contempt for disobeying an order made without jurisdiction.

4. Courts have no dispensing power over their rules and long-established practice, and a party to whose prejudice an innovation upon a rule of court is made has a right to seek redress in the appellate court.

5. Where the court below granted a temporary restraining order, *ex parte*, and continued it after a hearing on the bill, the defendants' answer, and certain affidavits, without requiring the complainants to file an undertaking to make good to the defendants the damages which might be sustained by them, as provided by rule 42 of that court; and afterwards made an order finding the defendants guilty of contempt for disobeying the restraining order,—it was *held*, on an appeal from the contempt order, that the defendants, by appearing and answering, had not waived their right to raise the objection (it not being shown that they had knowledge that no undertaking had been filed); that the lower court, as no undertaking had been filed, was without jurisdiction to grant the restraining order; that such order, for that reason, was not within the jurisdiction of the court to make; and that the defendants were not in contempt in refusing to obey it.

No. 1513.   Submitted May 10, 1905.   Decided June 13, 1905.

HEARING on an appeal by the defendants from an order of the Supreme Court of the District of Columbia adjudging them guilty of contempt of court for violating a temporary restraining order.                                      *Reversed.*

The facts are sufficiently stated in the opinion.

*Mr. Edwin Forrest, Mr. Hugh T. Taggart,* and *Mr. A. B. Webb* for the appellants.

There was no appearance for the appellees.

Mr. Justice DUELL delivered the opinion of the Court:

This is an appeal taken from an order adjudging the appellants Simon P. W. Drew, George Robinson, and William Howard guilty of a contempt, which consisted of a violation of certain preliminary restraining orders issued by the court below.

The suit is one originally brought by eight complainants, one of whom was a trustee and six were deacons of the Metropolitan

Baptist Church, of Washington, District of Columbia, against one Drew, who had been acting as the temporary pastor of said church, and four others, two of whom were trustees of said church. The original bill states that the complainants as officers, are to manage the affairs of the church and have care and control of its property. Most of its averments consist of charges that Drew is unfit to be pastor of the church. That he has joined with others in an attempt to disrupt the church. The bill further alleges that the church has a membership of over 1,000, and asserts that the complainants are entitled to the exclusive charge of the affairs of the church, in the absence of the regular pastor, under the rules and regulations of the Baptist denomination, and that they represent three fourths of the members of the church. It is alleged that Drew is not a fit person to be pastor of the church. The relief demanded is that the defendants be restrained from in any wise interfering with the affairs of the church and molesting or disturbing the good order and peace thereof, and that the defendant Drew be restrained from entering the church in the capacity of a minister of the gospel, or for any other purpose, and from interfering with the worship of the members of said church.

Upon this bill of complaint the defendant Drew was restrained, as prayed in the bill, until further order, if any, made by the court after hearing, which was fixed for the 1st day of April, 1904.

A few days thereafter leave was given to complainants to file an amended and supplemental bill without discharging or affecting the restraining order. Thereupon an amended and supplemental bill was filed, making the Metropolitan Baptist Church a party complainant, and alleging that Hogan, one of the original complainants, sued in his capacity as trustee of the church. The amended bill then charges that, after the issue of the restraining order, the defendants were guilty of unseemly conduct, and had invaded the church edifice, using more or less violence; that they undertook to hold a meeting on the evening of the 24th of March; that on the following evening, when a regular church meeting was to be held, the defendants, usurping the functions

of the deacons, in an irregular and unlawful manner proceeded
to elect Drew pastor for a term of six months. Further unlaw-
ful acts are alleged to have been committed by the defendants on
the 26th and 29th of March. The relief prayed was that the
defendants, their agents and associates, should be perpetually
restrained and enjoined from interfering with the affairs of the
church or disturbing the good order and peace thereof, and that
the defendant Drew be restrained from acting as pastor, save
with the permission of the board of deacons.

The answer of the defendants was filed the following day, and
contains, among other allegations, one setting forth that the
complainants had been suspended from office at a meeting of
the church held March 25, 1904. It denied that under the
usages and customs of the church the deacons had control of the
church property and affairs, and alleges that such management
was in the body of the church, certain duties being delegated to
the board of deacons and board of trustees, which duties were
revocable at the will of the church; that the trustees and their
successors held the title to the church property for the church,
and that the deacons had duties which lay in the direction of
church discipline and the spiritual welfare of the members; that
both these boards had only power to investigate and report, the
final decision being with the body of the church. The answer
further gives the defendants' version of the trouble in the
church and what occurred on the evening of the 24th of March,
and alleges that the complainants represent only a small minori-
ty of the members of the church.

It is unnecessary at this time to set forth the averments of the
affidavits submitted for the consideration of the court at the
hearing of the order to show cause on April 4. It appears, how-
ever, that an affidavit presented on behalf of the defendants
purports to have been executed by some 400 members of the
church. At the conclusion of the hearing the court continued
the restraining order against Drew and restrained the defend-
ants Howard, Robinson, and Chapman from in any wise in-
terfering with the affairs of the church so as to molest the good
order and peace thereof. A further order was made directing

the board of deacons to call a meeting of the church for the purpose of extending a call to some person as pastor, and directed that all the members of the church should proceed to vote upon the names presented by the board of deacons, and providing that either party might apply for the appointment of three disinterested Baptist ministers of the District of Columbia, under whose direction the meeting was to be held.

We are not called upon at this time to consider any matter but that of the order adjudging the defendants in contempt, and have made reference to the general prior proceedings in the suit in order to consider more intelligently the question before us. It seems to us, however, that the controversy is one of those unfortunate and unseemly church quarrels, which too often arise and which the courts should have as little to do with as possible. It appears to us that there is a serious question whether the complainants are in a position to maintain their bill. So far as appears, no authority was given them to bring the suit or to join the church as a party complainant, and the deacons do not appear, under the form of government applicable to Baptist churches, to be clothed with any power over the temporal affairs of such a church; and that, if there be any authority in either the deacons or the trustees to control the church building, it seems to be with the trustees, only one of whom appears as a party complainant. There is much to show that the complainants do not represent a majority of the church members. Both parties recognize Hiscox and his work on church government as an authority as to forms of government practised among the various Christian denominations. Hiscox classes the Baptists under the head of the "Independent" in which the governing power rests entirely with the people, *i. e.,* the body of the members of each local church, each being entirely separate from and independent of all others so far as authority and control are concerned. He further says: "Baptists assert that each individual church is self-governing and independent of all other churches or bodies whatever as to the administration of its own affairs." He states that the deacons have charge of the sick and needy members and act as counselors

and assistants to the pastor, and, in the absence of the pastor, conduct the devotional meetings, etc. He states that they have no authoritative or dictatorial control over church affairs. Of the trustees, he says, that they should hold themselves bound by every consideration of morality to carry out the wishes of the church and to act under their instructions. As stated, it appears that the church had a membership of over 1,000, and it does not appear that any meeting of the church was ever held authorizing the commencement of the suit, and without such order the authority of the complainants to maintain this suit would be extremely questionable. In the leading case of *Watson* v. *Jones,* 13 Wall. 679, 20 L. ed. 666, the court, in referring to the questions coming before the civil courts concerning the right to property held by ecclesiastical bodies, enumerates three classes of questions which came before the civil courts for consideration. One class embraces churches which are, as the court says, of "a strictly congregational or independent organization, governed solely within itself, either by a majority of its members or by such other local organism as it may have instituted for the purpose of ecclesiastical government. * * * If the principle of government in such cases is that the majority rules, then a numerical majority of members must control the right to the use of the property."

It would seem that, in the consideration of the question of where the power of control over the use of the church property is lodged, it rests with the congregation, and not with the deacons. If any church board has control over the church property, it would be the trustees.

After the restraining order was continued against Drew and extended to the defendants Howard, Robinson, and Chapman an order was issued by the court, on May 21, 1904, directing the defendants and others to show cause why they should not be adjudged guilty of contempt of the orders of the court theretofore passed. The order was made returnable May 25, but there was no hearing until October 19, when the matter was heard upon the motion and supporting affidavits, the answer thereto, and affidavits in support thereof, and upon certain testimony given in

open court. After such hearing the court adjudged the defendants Drew, Robinson, and Howard guilty, and sentenced Drew to imprisonment for a period of sixty days, and Robinson and Howard for the term of thirty days each. An appeal having been duly taken, the case came on for argument before us. It was heard upon the oral argument and brief filed on behalf of the appellants. No argument was made, or brief filed, for the appellees. In view of the conclusion at which we have arrived, it is unnecessary to determine whether the court arrived at a correct conclusion in determining upon the facts that the defendants were guilty of a violation of the injunction. We have, however, read the testimony, and find that it is very conflicting; but we are not as favorably placed as was the trial court to determine the facts, for the reason that some of the parties were examined in open court. We should be inclined to follow the court below on all questions of fact relating to the alleged violation of the restraining orders, were it necessary to consider them.

It is well settled that the United States courts have no power to punish a party for contempt for disobeying an order made without jurisdiction. *Ex parte Fisk,* 113 U. S. 713, 28 L. ed. 1117, 5 Sup. Ct. Rep. 724; *Re Ayers,* 123 U. S. 443, 485, 31 L. ed. 216, 223, 8 Sup. Ct. Rep. 164. Both of these cases have been cited many times with approval.

Objection to the jurisdiction of the court to pass the judgment and sentence was presented to the court below and forcibly urged before us. It is only necessary to refer to the objection, which we consider to be controlling. Equity rule 42 of the supreme court of the District declares that, "except when an injunction is to stay proceedings in an ordinary suit at law, or is against a judgment debtor who is made a defendant to a creditor's bill, no injunction or restraining order shall be issued except upon the precedent condition that the complainant execute and file in the cause (with surety or sureties, if deemed necessary by the justice, and to be approved by him) an undertaking to make good to the defendant all damages by him suffered or sustained by reason of wrongfully and inequitably suing out the

injunction, and stipulating that the damages may be ascertained in such manner as the justice shall direct, and that, on dissolving the injunction, he may give judgment thereon against the principal and sureties for said damages in the decree itself dissolving the injunction."

It appears that the court issued the restraining order of March 26, and continued it under the order of April 4, without requiring the filing of an undertaking; and it is therefore urged that these orders were inoperative and void by reason of the failure to require that an undertaking be filed. We think this point is well taken. By the terms of the rule it is made a condition precedent to the issuance of an injunction or restraining order, in a suit of this character, that an undertaking be executed and filed. This rule is binding upon the judge granting the injunction or restraining order, and he has no right to waive the requirement. It is true that this protection is for the defendant and is for his benefit, and doubtless a party defendant may waive the requirement. We do not think, however, that this requirement is one that is waived merely by appearing and pleading to the merits, unless, possibly, where it is affirmatively shown that the defendant had knowledge that no undertaking had been executed and filed. The original order in this case was granted *ex parte,* and the defendant had the right to presume that the court had obeyed its own rules. Parties to suits and their attorneys are justified in presuming that a court will not violate its own rules. 18 Enc. Pl. & Pr. p. 1265. In *Wall* v. *Wall,* 2 Harr. & G. 79, it was held that courts have no dispensing power over their rules and long-established practice, and that a party to whose prejudice an innovation upon a rule of a court is made has a right to seek redress in the appellate court. This doctrine was recognized and affirmed in *Abercrombie* v. *Riddle,* 3 Md. Ch. 320, 325.

The statutes of nearly all of the States provide that no injunction or restraining order shall be granted until an undertaking has been executed and filed in the cause. The courts have uniformly, though perhaps not universally, held that this requirement is a condition precedent and cannot be waived by

the court, and that there is no presumption of a waiver by a party defendant; that any waiver must be proved, and not presumed.

Rule 42, in our opinion, has the force of a statute. A duly authorized rule undoubtedly has the force of law, and is binding upon the court as well as upon parties to an action, and cannot be dispensed with to suit the circumstances of any particular case. "The courts may rescind or repeal their rules without doubt, or, in establishing them, may reserve the exercise of discretion for particular cases. But the rule, once made without any such qualification, must be applied to all cases which come within it until it is repealed by the authority which made it." *Thompson* v. *Hatch,* 3 Pick. 512. This rule was quoted with approval in *Rio Grande Irrig. & Colonization Co. v. Gildersleeve,* 174 U. S. 603, 43 L. ed. 1103, 19 Sup. Ct. Rep. 761, where it was held that a rule of the supreme court of New Mexico, fixing the time in which motions could be made to set aside judgments, had the force of law, and could not be disregarded by a trial judge to whom no discretion was left.

We do not think the rule in question is analogous to a rule of a court requiring a nonresident plaintiff to give security for costs. Such a rule is not generally recognized as a condition precedent to bringing a suit, and in most jurisdictions little or no attention is paid to it, unless the defendant notifies the plaintiff to file the security, or files a motion for an order requiring such security to be given. In the former case it is made the duty of the court, as we read the rule, to see that the necessary undertaking is executed and filed; and it has been held that a defendant is not in contempt in refusing to obey an injunction until the undertaking has been given in any case in which it is required. *Lamon* v. *McKee,* 7 Mackey, 446. As we understand the facts in the present case, the court itself, in granting the restraining order, nullified the rule by expressly providing that no undertaking be given. It would seem to us to be the plain duty of the court, in granting an injunction, to see that the rule requiring that an undertaking be executed be complied with so that in case of violation of the injunction the defendant could

be punished. It is important to the due administration of justice that all proceedings over which the court has special control be regular so that no opportunity be given a party to successfully evade the orders made by the court.

We do not think the defendants, by appearing and answering, waived their right to raise the objection that the court was without jurisdiction to grant the injunction, having released the complainants from the express requirement of the rule that they execute and file a bond. Whenever it came to their knowledge that the requirement of rule 42 had not been obeyed, they could avail themselves of the objection. There is no proof that they had any knowledge that the bond had not been executed and filed until the time when the question was first raised. Putting aside the question whether these complainants have any standing in court, we are of the opinion that the defendants were not in contempt in refusing to obey the injunction for the reason that the undertaking required by rule 42 had not been executed and filed at the time when required, or at any later date.

It follows that the order of October 20, 1904, adjudging Simon P. W. Drew, George Robinson, and William Howard in contempt, and imposing punishment therefor, is void, and should be reversed with costs, and the case remanded with directions to proceed in conformity with this opinion.

*Reversed.*