STATE, Respondent, v. RAMSAY, Appellant.

*February 9—March 6, 1962.*

158

For the appellant there were briefs by *Robert P. Russell,* corporation counsel of Milwaukee county, and *James J. O'Donnell,* assistant corporation counsel, and oral argument by *Mr. O'Donnell.*

For the respondent the cause was argued by *Ben J. Wiener,* deputy district attorney of Milwaukee county, with whom on the brief were *John W. Reynolds,* attorney general, and *William J. McCauley,* district attorney of Milwaukee county, and oral argument also by *William A. Platz,* assistant attorney general.

A brief *amicus curiae* was filed by *Ralph M. Hoyt* of Milwaukee, representing the Milwaukee Bar Association.

CURRIE, J.   This appeal raises two issues :

(1) Was it error for the circuit court to have refused to grant Ramsay an adjournment of the hearing on the order, which required him to show cause why he should not be held in contempt, so as to enable him to prepare his defense?

(2) Was the circuit court's order of September 7, 1961, a lawful order within the meaning of sec. 256.03 (3), Stats., the disobedience of which would provide a basis for adjudging Ramsay guilty of criminal contempt?

*Right to Adjournment.*

Sec. 256.04, Stats., provides :

"Contempts committed in the immediate view and presence of the court may be punished summarily; in other cases the party shall be notified of the accusation and have a reasonable time to make his defense."

Even without such a statutory command that one accused of having committed a contempt without the presence of the court be granted reasonable time in which to prepare his defense, the due-process clause of the Fourteenth amendment requires that this be done. *Cooke v. United States* (1925), 267 U. S. 517, 45 Sup. Ct. 390, 69 L. Ed. 767.

Ramsay's disobedience of the September 7th order, which gave rise to the order to show cause of September 8th, occurred without the presence of the court. Therefore, the trial court should have granted the request for an adjournment. The length of time for which such an adjournment should be granted lies within the sound discretion of the court. Situations in which witnesses may have to be contacted, interviewed, and subpoenaed by the party accused of being in contempt in order to prepare his defense, might require a longer period than where the defense rests solely on the legality of the order disobeyed, as was the case here. However, it is difficult to conceive of a situation in which the minimum period encompassed in such an adjournment should be less than two or three days.

Here the trial court offered to grant a reasonable period of adjournment on the condition that Ramsay, in the meantime, obey the order and accept the two children into the Home. The court had no right to impose such a condition under the instant facts. Possibly in an emergency situation, where irreparable harm might occur if the court's original order were not obeyed, such a condition might be justified. However, as hereinafter pointed out, the court had available another course of action for providing temporary care for the two children, and there was no necessity for compelling Ramsay to forthwith obey the order as a condition precedent to granting the adjournment required by sec. 256.04, Stats.

The state contends that, irrespective of Ramsay's refusal on September 8th to obey the order of the court, he also committed a contempt in the presence of the court at the hearing on September 9th. This is because, when then asked by the court whether he was going to obey the order of September 7th, Ramsay replied that he would accept Delores into the Home but not Ralph. We are of the opinion that the provision of sec. 256.04, Stats., requiring an adjournment to one accused of a contempt without the presence of the court, cannot be circumvented by requiring the accused to

answer in the court's presence whether he will now obey a prior court order, and then finding that his negative answer constitutes a contempt occurring in the presence of the court. It was improper under the facts of this case for the trial court to have asked this question of Ramsay. Cf. *State ex rel. Attorney General v. Circuit Court* (1897), 97 Wis. 1, 15, 72 N. W. 193.

The state relies upon *Brown v. United States* (1959), 359 U. S. 41, 79 Sup. Ct. 539, 3 L. Ed. (2d) 609, and *Levine v. United States* (1960), 362 U. S. 610, 80 Sup. Ct. 1038, 4 L. Ed. (2d) 989, as supporting its contention that Ramsay committed a contempt in the presence of the court which rendered inoperative the adjournment provision of sec. 256.04, Stats. Federal Rules of Criminal Procedure, sec. 42 (b) is similar to that portion of sec. 256.04, Stats., which provides for an adjournment where the alleged contempt occurred outside of the presence of the court. In the *Brown* and *Levine Cases,* witnesses who had been subpoenaed to testify before a grand jury, and had been granted immunity, refused to testify. Each witness was brought before the United States district judge who had impaneled the grand jury and was ordered to testify. When returned to the grand jury, each again refused to testify in disobedience of such order. Each was again brought before the court and asked if he would then obey the order, and each answered in the negative. In both cases the witnesses were summarily adjudged in contempt and punished by the imposition of a prison sentence. The United States supreme court, by split decisions, affirmed the action of the trial court in each case.

The factual difference between the *Brown* and the *Levine Cases* and the instant case is apparent from this statement in the majority opinion in the *Brown Case* (359 U. S. at p. 49):

"A grand jury is clothed with great independence in many areas, but it remains an appendage of the court, powerless to perform its investigative function without the court's aid, because powerless itself to compel the testimony of witnesses. It is the court's process which summons the witness to attend and give testimony, and it is the court which must compel a witness to testify if, after appearing, he refuses to do so."

The Home is not an appendage of the circuit court for Milwaukee county, nor was its efficient functioning in any manner dependent upon whether Ramsay obeyed the court's order of September 7th. Furthermore, the interpretation which the federal courts place upon Federal Rule, sec. 42 (b), is only persuasive, and not controlling, authority on how this court construes sec. 256.04, Stats.

The state also calls attention to the fact that in *State ex rel. Reynolds v. County Court* (1960), 11 Wis. (2d) 560, 105 N. W. (2d) 876, the county court proceeded against the county clerk upon an order to show cause for an alleged contempt which had occurred without the presence of the court. Then, at the hearing the county clerk was found guilty of contempt and, upon the reconvening of the hearing, was adjudged guilty of a further act of contempt committed in the presence of the court. However, in that case this court did not pass on the issue of whether the county clerk was entitled to an adjournment of the original hearing, in order to prepare his defense pursuant to sec. 256.04, Stats., without being required to state whether he still refused to comply with the prior order of the court. Therefore, that case has no efficacy as a precedent governing the outcome of the issue here under consideration.

In criminal-contempt proceedings where the alleged contempt consists of a failure to obey an order or process of the court occurring outside the presence of the court, the judge who issued the disobeyed order or process should give

consideration to whether he should take the discretionary step of disqualifying himself in order to permit another judge to try the contempt issue. This is suggested because of the possibility that the judge, whose order or process has been disobeyed, may not be able to decide the contempt issue as impartially as a judge who has had no part in the proceedings giving rise to the citation for contempt. Federal Rule, sec. 42 (b), requires disqualification of the trial judge where "the contempt charged involves disrespect to or criticism of a judge, . . ." However, this requirement of disqualification does not apply where the alleged contempt is disobedience of a court order or process. *Nilva v. United States* (1957), 352 U. S. 385, 396, 77 Sup. Ct. 431, 1 L. Ed. (2d) 415, rehearing denied, 353 U. S. 931, 77 Sup. Ct. 716, 1 L. Ed. (2d) 724. See also Anno. 64 A. L. R. (2d) 600, 634.

When confronted with an issue of contempt a court would do well to heed these words of caution expressed by Mr. Justice WINSLOW in *State ex rel. Attorney General v. Circuit Court, supra* (at p. 8) :

"It [the power to punish acts for contempt] is, perhaps, nearest akin to despotic power of any power existing under our form of government. Such being its nature, due regard for the liberty of the citizen imperatively requires that its limits be carefully guarded, so that they be not overstepped. It is important that it exist in full vigor; it is equally important that it be not abused. The greater the power, the greater the care required in its exercise. Being a power which arises and is based upon necessity, it must be measured and limited by the necessity which calls it into existence."

If there were only before us the error in refusing to grant a proper adjournment of the September 9th hearing, the judgment would have to be reversed and the cause remanded for further proceedings. However, a remand is unnecessary if the order disobeyed was not a lawful order under sec. 256.03 (3), Stats.

*Lawfulness of Order Disobeyed.*

Sec. 256.03, Stats., provides in part as follows:

"Every court of record shall have power to punish, as for a criminal contempt, persons guilty of either of the following acts and no other:
"(3) Wilful disobedience of any process or order lawfully issued or made by it."

We consider sub. (3) of sec. 256.03, Stats., to be but a codification of the common law. The universal rule is that the failure of a person to obey an order that is void for want of jurisdiction in the issuing court is not punishable as contempt. *State v. Marcus* (1951), 259 Wis. 543, 553, 49 N. W. (2d) 447; *Seyfert v. Seyfert* (1930), 201 Wis. 223, 229, 229 N. W. 636; 12 Am. Jur., Contempt, p. 406, sec. 24; 17 C. J. S., Contempt, p. 19, sec. 14; Anno. 12 A. L. R. (2d) 1059, 1067. Want of jurisdiction to act means a lack of jurisdiction to act at all in a given situation or with reference to a certain subject matter. *Seyfert v. Seyfert, supra,* at page 228.

On the other hand, disobedience of an order made by a court within its jurisdiction and power is a contempt, although the order may be clearly erroneous. *Wisconsin E. R. Board v. Milk & Ice Cream Drivers & Dairy Employees Union* (1941), 238 Wis. 379, 400, 299 N. W. 31; *State ex rel. Attorney General v. Fasekas* (1937), 223 Wis. 356, 358, 269 N. W. 700; *State ex rel. Fowler v. Circuit Court* (1898), 98 Wis. 143, 156, 73 N. W. 788; 17 C. J. S., Contempt, p. 21, sec. 14; Anno. 12 A. L. R. (2d) 1059, 1107. For a discussion of the distinction between a merely erroneous order and one void because of lack of jurisdiction of the court over the subject matter, see *Cline v. Whitaker* (1911), 144 Wis. 439, 442, 129 N. W. 400.

Whether the instant order of September 7th was void for lack of jurisdiction of the court over the subject matter is

not contingent upon whether the court had jurisdiction to adjudge the temporary custody of the two children during the pendency of the trial of the divorce action. The court clearly had this power under sec. 247.23 (1), Stats. Rather, the test is whether the court had any jurisdiction over the operation of the Home which would enable it to order the Home and its superintendent to accept temporary custody of the children.

For the circuit court to have power to order a public agency, such as the Home, to accept custody of children presently under the jurisdiction of the court there must exist either, (1) a statute granting this power to the court; or (2) a statute which imposes upon the public agency the duty to accept such custody. We are unable to find any statute either empowering the court to require the Home to accept temporary custody of the two children, or making it the duty of the Home to accept temporary custody if so ordered by a court.

Sec. 247.24, Stats., empowers a court, in rendering a judgment of annulment, divorce, or legal separation, to declare a child of the parties, under certain prescribed conditions, to be "a dependent and give the care and custody of such child to a relative (as defined in ch. 48, Stats.) of the child, a county agency specified in sec. 48.56 (1), a licensed child-welfare agency, or the state department of public welfare." In counties with a population of 500,000 or more, of which Milwaukee county is the only one, sec. 48.56 (1) (c) specifies that child-welfare service is to be provided by a county welfare department organized under sec. 49.51. Under this statute, this department is under the jurisdiction of the county board of public welfare. Sub. (2) (c) of sec. 46.21 requires this board to appoint a director of institutions and departments, and sub. (2) (a) of this statute places the operation of the Home and other enumerated county institutions in the board acting through the director of institutions

and departments. Ramsay is not the director of institutions and departments but only the superintendent of the Home. Thus, the circuit court, in entering a judgment of divorce, would have no power under sec. 247.24 to award custody of the children to the Home, although it would be empowered to award such custody to the department. The department in turn would have authority, in its discretion, to place the children in licensed foster homes, to contract for their care by licensed child-welfare agencies, or to place them in the Home. Sub. (1) (c) and (e) of sec. 48.57.

Sec. 247.23 (1), Stats., which authorizes the court during the pendency of a divorce action to provide by order for the temporary custody of children of the parties, unlike sec. 247.24, does not spell out the persons and agencies to whom the court may award such custody. It merely authorizes the court to make such a temporary custody order "as in its discretion shall be deemed just and reasonable." While sec. 247.23 (1) may grant broader custody powers to the court than sec. 247.24, the court cannot compel any agency, public or private, to accept such awarded custody against the will of those charged with the administration of the agency, absent some specific statute so requiring. However, we deem that secs. 247.23 (1) and 247.24 must be read together so that both the Milwaukee county department of public welfare and the state department of public welfare would be required to accept temporary custody of children of parents who are parties to a pending divorce action, if ordered to do so by the court in which the action was pending.

Both the trial court, at the hearing of September 9th, and the state, on this appeal, have contended that sec. 48.58 (1), Stats., made it mandatory upon the Home, to accept temporary custody of the two children as directed by the September 7th order. This statute provides:

"Any existing county children's home may do any of the following:

"(a) Accept legal custody of dependent or neglected children transferred to it by the children's court;

"(b) Provide care for dependent or neglected children referred by the county welfare department;

"(c) Provide temporary shelter care for dependent or neglected children."

Noting that the statute uses the word "may," rather than "shall," we see no necessity for construing it as mandatory in character. Par. (c) would have authorized the Home in its discretion to accept the temporary custody of the children covered by the September 7th order but did not compel it to do so in the absence of some other express statutory provision authorizing the court to place temporary custody in the Home. If the order had awarded temporary custody to the department, the director of institutions and departments, in his discretion, could have placed the children in the Home and the Home would have been obligated to accept them. This is because of the previously mentioned provision of sec. 46.21 (2) (a), Stats.

It has been urged that the circuit court was faced with an emergency and that this justified both the order of September 7th and the refusal to grant Ramsay an adjournment on September 9th unless he would in the meantime comply with the order. We doubt that the circuit court has the power, even in an emergency, to invade the field of the administration of county institutions and to bypass the department. However, that there was no emergency which required such action is demonstrated by the fact that in March the department had accepted temporary custody of the two Bowser boys, and again on September 12th the court adjudged custody of Ralph and Delores in the department when it dismissed the complaint in the divorce action.

It is our considered judgment that the circuit court was without power to order that the Home and Ramsay, its

169

superintendent, accept custody of Ralph and Delores Bowser. Such order, in so far as it applied to the Home and Ramsay, was void. Therefore, no contempt was committed by Ramsay in refusing to obey the order.

*By the Court.*—Judgment reversed, with directions to dismiss the proceeding.