**In the Matter of Iris Elaine BANKS.**

**No. 6754.**

District of Columbia Court of Appeals.

Argued Jan. 29, 1973.

Decided June 15, 1973.

---

1. Unauthorized use of a vehicle is a general intent crime, while larceny requires specific intent.

Leo N. Gorman, Asst. Corp. Counsel, Washington, D. C., with whom C. Francis Murphy, Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellant.

No appearance and no brief filed for appellee.

Before KELLY, KERN and PAIR, Associate Judges.

1. See D.C.Code 1972 Supp., § 16–2312.

2. Supp.R. at 2. See D.C.Code 1972 Supp., § 16–2310.

KELLY, Associate Judge:

On Saturday, August 5, 1972, a juvenile of tender (13) years was petitioned as a delinquent in the Family Division of the Superior Court based on allegations of grand larceny, unauthorized use of an automobile, tampering, and malicious destruction of property. Through appointed counsel the juvenile waived a probable cause hearing and denied complicity in the charges. An October trial (fact-finding hearing) date was then set, but lack of adequate information necessitated the deferral of the requisite detention hearing to the following Monday.[1] Until then the juvenile was to remain in the Receiving Home upon a court finding that detention was required "to protect the property of others from serious loss or damage".[2]

Miss Iris Elaine Banks, a social worker for the Social Rehabilitation Administration, was one of those present at the detention hearing held before another judge late in the afternoon of August 7. At that hearing, in response to an inquiry by the court as she understood it, Miss Banks stated[3] by way of background that the juvenile respondent had been

. . . committed to Social Services on 6–29–70 due to neglect. At that time his mother was unable to supervise him and give him adequate care. He was then placed at Junior Village, where his adjustment has been poor, and he was a behavior problem at Junior Village. And he absconded frequently. Then, on 6–27–72, he was released to his mother and there, he had made a satisfactory adjustment until today. We recommend that this case be continued pending his disposition hearing, which is the 11th— Friday, the 11th.

When Miss Banks recommended continued detention of the juvenile at the Receiving

3. Tr. at 3.

Home, the trial judge was moved, during further colloquy, to angrily express his concern over the fact that the juvenile had "been sitting in jail over the weekend";[4] that she had come to court with insufficient background information on the juvenile for him to make a reasoned decision on detention; that no one from her office unit works on Saturdays, and that she had not yet talked with the juvenile's mother. It was with some difficulty that Miss Banks managed to inform the court that the mother had been called and been given a message to come to court. Nevertheless, after hearing the Assistant Corporation Counsel's alternative suggestion that the juvenile be returned to Junior Village in the still-open neglect case, the court abruptly terminated the hearing by placing him in the custody of Miss Banks until the following morning.

Some thirty minutes later Miss Banks returned to the courtroom in the company of another Assistant Corporation Counsel. She refused, on advice of counsel, to take custody of the juvenile after the trial judge was asked and had declined to reconsider his order, dismissing without comment clear contentions that he had exceeded his statutory authority in entering the custody order and that Miss Banks had no duty to accept such a custodial responsibility. The court adjudged Miss Banks in contempt and sentenced her to serve eight hours in the custody of the United States Marshal, allowing a 10-day stay to note an appeal. While not in the transcript of proceedings, a subsequent docket entry recites that the juvenile was ordered released in the custody of his attorney who was to see that he was taken to his home at 923 Westminster Street, N. W.

Inexplicably, the trial judge did not reduce his contempt ruling to writing until August 24, 1972.[5] The written contempt order read, in part, that at the hearing Miss Banks "gave no information as to name(s) or addresses of the respondent's parent(s),[6] no information as to any other suitable custodian for respondent should he be released,[7] no information regarding respondent's prior delinquency involvement (if any) with the Juvenile Branch,[8] no information or recommendation regarding shelter care for respondent rather than detention at the Receiving Home,[9] nor any other relevant information.[10] Consequently, the only recommendation that the caseworker made was that the respondent again be remanded to the Receiving Home pending trial,[11] notwithstanding the fact that the caseworker had been assigned the respondent's case in the morning and the hearing at issue was held in the late

---

4. Tr. at 4.

5. Super.Ct.Juv.R. 42(a):
   (a) *Summary Disposition.* A contempt committed by a child may be disposed of summarily, and a contempt committed by an adult may be punished summarily, if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record.

6. This information was contained in the delinquency petition before the court, which showed that the father was deceased and the mother lived at the same address as the juvenile, the very one to which the court ordered the attorney to take the juvenile. Curiously, the docket states that the respondent and his father appeared for the detention hearing.

7. The trial judge never paused to inquire about another suitable custodian.

8. Miss Banks had informed the court that there was none.

9. The Assistant Corporation Counsel's alternate suggestion that the juvenile be sent to Junior Village was advanced.

10. The court was informed that the juvenile had been before the court on a neglect petition and had spent several years in Junior Village.

11. Any fair reading of the record establishes beyond doubt that Miss Banks never recommended that the juvenile be remanded to the Receiving Home pending trial. She did recommend that he be so remanded until the disposition hearing in the neglect case on Friday, the 11th, or at the very least until she could contact his mother and talk with her.

afternoon." [12] The court concluded by saying: [13]

> This Court sees no reason why a respondent should have to spend additional periods in detention, when such detention may not be necessary, because of the failure of representatives of the Social Rehabilitation Administration to adequately perform their jobs. The inadequacy of the Representative from the Social Rehabilitation Administration in the performance of her job, left this Court with no means with which to make a rational, intelligent and equitable resolution of the question of detention. Rather than to require the respondent to suffer an additional night in detention (possibly unwarranted) and because the Court felt the caseworker to be a competent custodian for the respondent overnight, this Court directed the caseworker Miss Iris Banks, to take custody of the respondent pending a further detention hearing the next morning (August 8, 1972). Subsequent to the order of this Court, Miss Iris Banks refused to comply with the order (upon advice of the Corporation Counsel). This court deemed such refusal to be contumacious. Therefore, pursuant to SCR–Juvenile 42(a), it is hereby ORDERED that Miss Iris Banks serve eight (8) hours in the custody of the United States Marshal.

■ The contempt order issued by the trial court in this case was void and could be disobeyed with impunity, for it is basic that

> . . . by an almost unbroken line of authority and unanimous consensus of judicial opinion the rule may be said to be firmly established that a court does not possess the right or power to punish as for contempt a disregard or violation

of its order or decree which it has rendered without jurisdiction over the subject matter or the parties or without power or authority to render the particular decree or order. Lack of such jurisdiction or power may therefore be raised by the person charged with contempt for violation of the order or decree (for the annulment or reversal of which he has taken no direct steps), in a collateral proceeding on appeal from the judgment of conviction for contempt or upon an application for habeas corpus to test the validity of the imprisonment for contempt. [12 A.L.R.2d 1067.] [14]

That the trial judge lacked authority to place the juvenile in the custody of Miss Banks without her consent is a matter of simple logic. Briefly put, D.C.Code 1972 Supp., § 16–2312(d)(2)(A), provides that, when in a juvenile proceeding the trial court concludes that detention or shelter care pending a fact-finding hearing is unnecessary it may place the child in the custody of a parent, guardian or custodian. Since Miss Banks is neither the juvenile's parent nor his legal guardian, the question is whether she can be deemed a "custodian" in whom the statute permits custody to be placed.

A "custodian" is defined as "a person or agency, other than a parent or legal guardian, to whom legal custody of a child has been given by court order and who is acting in loco parentis." D.C.Code 1972 Supp., § 16–2301(12). [15] There is obviously no way to fit Miss Banks within this definition. Certainly, referring to her as a "competent custodian" in a contempt order cannot transform her into a custodian in whom the court is empowered by statute to place custody, nor can the court by that or by any other means force custody upon

12. R. at 28.

13. R. at 28–29.

14. *See, e. g.,* Ex parte Rowland, 104 U.S. 604, 26 L.Ed. 861 (1882) ; Drew v. Hogan, 26 App.D.C. 55 (1905). *See also* and

*compare* State v. Ramsay, 16 Wis.2d 154, 114 N.W.2d 118 (1962).

15. *See* D.C.Code 1972 Supp., § 16–2301 (21), for the definition of the term "legal custody".

her. Our dissenting colleague does not suggest otherwise.

The order with which we are here concerned is not erroneous or voidable as were those at issue in Hunter v. United States, 48 App.D.C. 19 (1918), and other authorities cited in the dissent. It is, of course, appropriate to challenge such orders by direct appeal rather than in collateral contempt proceedings. But those cases are simply inapposite, for it is settled that when a court is without power or authority to issue the challenged order, a collateral attack upon that order by appeal from a conviction of contempt is proper.[16]

■ We would stress that it is no light matter to defy an order of court and that one does so at one's peril. However, when a court acts in excess of its authority in issuing an order, a refusal to obey that order is not punishable by contempt.

Reversed.

PAIR, Associate Judge (dissenting).

The order directing appellant to assume and maintain overnight custody of the child involved in the proceedings below was not challenged by an appeal[1] and so the majority has decided, nevertheless, that the court was without authority to enter the order. Reasoning from this, the majority concludes that appellant's in-court defiance of the order was not punishable by contempt. I disagree and would affirm the contempt order. A more detailed review of the factual background of the controversy than that set forth in the majority opinion seems necessary to put the issue in proper perspective.

Taken into custody, petitioned and detained, the child involved (a 13-year-old boy) was brought before another judge for an initial hearing on Saturday, August 5, 1972.[2] The child's appointed counsel waived a probable cause hearing and "trial" was scheduled for October 10, 1972. Because the court was not at that time furnished information sufficient to base a judgment as to whether the child should be released or detained pending trial, the detention hearing was continued until Monday, August 7, 1972, so that the court could have the benefit of the report and recommendation of the social worker assigned to the case. Consistent with the determination of the Director of Social Services that the detention of the child was required "To Protect the Property of Others from Serious Loss or Damage", the court ordered the child detained at the Receiving Home until the next session of the court.

When the detention hearing was resumed on Monday, August 7, 1972, appellant was present in her capacity as the social worker assigned to the case, and the following transpired:

MISS BANKS: My name is Iris Banks, from Social Services.

THE COURT: Well, why is this matter here?

.        .        .        .        .        .

According to the file here, on J–4477–72, on August 5th, probable cause hearing was waived by counsel and the matter was set for trial on October the 10th, '72.

Detention hearing was set for this morning?

.        .        .        .        .        .

MRS. HUHN [An Assistant Corporation Counsel]: I believe there wasn't enough information—the worker, Your

---

16. While we need not decide the point (neither briefed nor argued) in light of our view of this case, it is questionable that the custody order was subject to challenge by direct appeal.

1. D.C.Code 1972 Supp., § 11–721; D.C. App.R. 8.

2. By D.C.Code 1972 Supp., § 16–2311, it is provided that any child taken into custody shall with all reasonable speed be released to his parent, guardian or custodian or shall be accorded a detention hearing not later than the next day as provided in D.C.Code 1972 Supp., § 16–2312.

Honor, Saturday—I was present—did not have enough information to make a recommendation to the Court as to detention or not, or release.

.   .   .   .   .   .

THE COURT: . . .

. So we're hear today to hear from the social worker on this matter?

MRS. HUHN: Yes, Your Honor.

THE COURT: What is your name, madam?

MISS BANKS: Miss Iris Banks.

.   .   .   .   .   .

THE COURT: Why are we here today, madam?

MISS BANKS: For a law violation.

.   .   .

THE COURT: All right. Now, what are we going to do, hang him from the ceiling pending trial?

MISS BANKS: No. I would recommend that he be sent to the Receiving Home pending his trial on—

THE COURT: What other prior convictions does he have? Is this the first time he's charged with a crime?

MISS BANKS: Yes.

THE COURT: And you're going to send him to the Receiving Home?

MISS BANKS: Well, his mother isn't here and I wanted to check out his mother's situation.

THE COURT: Well, didn't you have time over the weekend to check it? Wasn't it continued on Saturday until today?

MISS BANKS: Yes, Your Honor.

THE COURT: —so you could come in here to court today and give us some facts?

This case was continued until today. This little boy has been sitting in jail over the weekend. What have you been doing over the weekend?

MISS BANKS: I—

THE COURT: You were supposed to come in here today and give us some facts so we could determine whether or not—what we're going to do with this young man pending trial.

Didn't you know that?

MISS BANKS: Yes, Your Honor.

THE COURT: Well, what have you got to give me? You haven't talked to his mother, have you? You don't know anything, do you? . . .

MISS BANKS: No, Your Honor.

THE COURT: . . . .

You knew Saturday, that you were supposed to come in here today with some facts.

MISS BANKS: I didn't get the report until this morning, Your Honor.

.   .   .   .   .   .

THE COURT: Who was in court Saturday from your office?

MISS BANKS: No one, that I know of.

THE COURT: You mean you tell me your office has no one sitting in these courts on Saturdays?

MISS BANKS: Unless there's someone from Protective Services. We do not work on Saturdays.[3]

3. In S.Rep.No.620, 91st Cong., 1st Sess., District of Columbia Juvenile Code [To accompany S. 2981] (1969), it was said:

.   .   .   .   .

(b) Any child taken into custody is to be thoroughly screened prior to his detention in a juvenile facility. . . . [T]he law enforcement officer or other person taking the child into custody must himself screen the child and forthwith bring before the Director of Social Services any child not released. Ap-

. . . . . .

Your Honor, what I was trying to say, he has a disposition hearing, which is Friday.

THE COURT: I'm not interested in Friday. He was charged last Saturday with a crime. Now, he has a right to an arraignment—to a hearing on that, and to be determined whether or not he should be released to third-party custody or held in jail pending the trial date.

You're a social worker, is that right?

MISS BANKS: Yes.

THE COURT: And you've been trained to care that much about people, that you don't care whether they sit over in jail over a weekend. The case is continued until Monday for this very purpose, to get a recommendation from you, based upon your knowledge of investigation as to what should be done with this young man, and you come in here this afternoon and tell me that you haven't talked to his mother and you don't know anything, but, in any event, you're going to recommend that he stay locked up.

. . . . . .

MISS BANKS: Yes.

I have tried—Mrs. Hamilton, his mother, called at the office while I was here at court and I left a message for her to come to court, and she has not shown up yet.

plying the same criteria, the Director of Social Services (or his deputy, that is to say, a court officer) must again screen any child brought before him. *The committee expressly intends that at least one such court officer from the Director of Social Services shall be available at all times, 24 hours of every day, and expects that such officer may be stationed at the juvenile facility itself. The committee intends further that (1) supporting personnel shall be likewise available.* . . . [Emphasis added.]

THE COURT: So, since she hasn't shown up, you recommend that he be locked up; it that right?

[A pause.]

Is that right?

MISS BANKS: Well, until I can get to talk with her.

. . . . . .

THE COURT: No. You know what I'm going to do? I'm going to put him in your custody [speaking to Miss Banks] until tomorrow. You be back here in court with him tomorrow morning at ten o'clock, and I want a report on this young man and his mother; and he will be in your custody until tomorrow morning at ten o'clock.

Make that order out.

Later that afternoon another Assistant Corporation Counsel moved the court to reconsider and rescind its order urging that appellant was not a custodian within the purview of D.C.Code 1972 Supp., § 16–2301(12) and (21). The motion was denied [4] and that Assistant Corporation Counsel then announced to the court that, on his advice, appellant would refuse to comply with the order. Upon inquiry by the court, appellant confirmed that she refused to comply with the court's order. The court then adjudged her in criminal contempt and sentenced her to serve eight hours in the custody of the United States Marshal.[5]

4. Appellant did not see fit to challenge further that order.

5. The court, consistent with Chief Judge Greene's opinion in In re Savoy, et al., Super.Ct.Juv. (Nos. J–4808–70 & J–4714–70, October 13, 1970), 98 Wash.L. Rep.1937 (October 30, 1970), refused to order the child returned to the Receiving Home and released him to the custody of his court appointed counsel who undertook to take the child home.

Because there was no appeal from the order which directed appellant to assume and maintain overnight custody of the child, it was wholly unnecessary—in my opinion—to decide whether, for the purposes of D.C.Code 1972 Supp., § 16–2311(a)(1) and § 16–2312(d)(2)(A), appellant was or was not a proper custodian.[6] Thus the only issue this court was called upon to resolve is whether appellant's in-court defiance of the order was properly punishable as contempt.[7]

In Hunter v. United States, 48 App.D.C. 19, 23 (1918), the Juvenile Court adjudged the father of a child in contempt for violating an order respecting the custody of the child. In disposing of the father's contention that the custody order was invalid, the court said:

> [H]owever defective or erroneous the proceedings, the judgment was not void, and could, at most, be voidable. It cannot, therefore, be collaterally impeached in this proceeding. Murphy v. Massachusetts, 177 U.S. 155, 159, 44 L.Ed. 711, 714, 20 Sup.Ct.Rep. 639; District of Columbia v. Wilson, 44 App.D.C. 265, 269. Defendant cannot justify his conduct upon his assumption that the order of the court affecting the status of his son was invalid. So long as the order stood, it must be obeyed by all whom it affected. To hold otherwise would be to permit anyone affected by the order to set up his own judgment against that of the court, which will not be permitted. The rule in such a case is concisely stated in Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 450, 55 L.Ed. 797, 809, 34 L.R.A. (N.S.) 874, 31 Sup.Ct.Rep. 492, as follows: "If a party can make himself a judge of the validity of orders which have been issued, and by his own acts of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the 'judicial power of the United States' would be a mere mockery."

See also Land v. Dollar, 88 U.S.App.D.C. 311, 190 F.2d 366 (1951), cert. dismissed, In re Killion, 344 U.S. 806, 73 S.Ct. 7, 97 L.Ed. 628 (1952). Accord, United States v. United Mine Workers of America, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947). Cf. Brotherhood of Locomotive Fire. & Eng. v. Bangor & A. R. Co., 136 U.S.App.D.C. 230, 420 F.2d 72 (1969), cert. denied, 397 U.S. 1024, 90 S.Ct. 1258, 25 L.Ed.2d 533 (1970). This panel of the court is not free to deviate from the great weight of precedent in this jurisdiction.[8]

Based upon the foregoing, appellant was not, in my opinion, well advised when she ignored available remedies[9] and elected to openly defy the court's order. The trial judge, concerned and very properly so as to the welfare of the child who was before the court charged for the first time as a

---

6. D.C.Code 1972 Supp., § 16–2301, "Definitions", it is provided:

(12) The term "custodian" means a person or agency, other than a parent or legal guardian, to whom legal custody of a child has been given by court order and who is acting in loco parentis.

. . . . .

(21) The term "legal custody" means a legal status created by Division order which vests in a custodian the responsibility for the custody of a minor which includes—

(A) physical custody and the determination of where and with whom the minor shall live; . . . . .

7. After oral argument in this case it was brought to the attention of the court that another judge in the Family Division ordered the Director of Social Services to assume custody of two minor female children involved in a marital dispute. Although the Director interposed no objection of record, this court, upon motion of the mother of the children, stayed the order pending appeal. Ziegler v. Ziegler, D.C.App., 304 A.2d 13 (1973).

8. See M.A.P. v. Ryan, D.C.App., 285 A.2d 310, 313 (1971).

9. See supra note 1.

delinquent, sought only a reasonable alternative to further confinement at the Receiving Home pending completion of the detention hearing.[10]

The statutory scheme [11] mandates of the court and its officers not only a sensitive concern for any child exposed to the juvenile justice system but also the accomplishment of a speedy and humane disposition of any such child, particularly one who has been removed from his home, family and friends pending adjudication of the subject of any complaint against him. Fulwood v. Stone, 129 U.S.App.D.C. 314, 394 F.2d 939 (1967). Needless to say, the discharge of that responsibility is seriously impeded when, as in this case, the supporting staff members of the court are derelict in the performance of their duties.[12]

The record, of course, speaks for itself telling in greater detail of the callous indifference to the welfare of the child demonstrated by the supporting staff of the court at every stage of the proceedings.

Understandable, therefore, was the response of the trial judge who, mindful no doubt of the teaching of Fulwood v. Stone, *supra,* proceeded with firmness to make a disposition of the child which he deemed to be just and reasonable under the circumstances.[13] I indicate no opinion as to the propriety of the court's response to severe provocation or as to the validity of the order. I would hold only that since the order was not challenged by an appeal, this court should refuse to disturb it. For the reasons indicated I respectfully dissent.

10. Putting aside the gravity of any deprivation of the liberty of a 13-year-old child, the Receiving Home should be a last resort where no suitable alternative exists. Cooley v. Stone, 134 U.S.App.D.C. 317, 414 F.2d 1213 (1969) ; Fulwood v. Stone, 129 U.S.App.D.C. 314, 319, 394 F.2d 939, 944 (1967) ; Creek v. Stone, 126 U.S.App.D.C. 329, 379 F.2d 106 (1967). See. also Chief Judge

Greene's directive respecting detention at the Receiving Home, In re Savoy, et al., *supra* note 5.

11. D.C.Code 1972 Supp., § 16–2301 et seq.

12. S.Rep.No.620, 91st Cong., 1st Sess., *supra* note 3.

13. D.C.Code 1972 Supp., §§ 16–2311 & 16–2313.