**Gershon KAMMERMAN, Appellant,**

v.

**Trudy KAMMERMAN, Appellee.**

No. 86–1178.

District of Columbia Court of Appeals.

Argued Jan. 14, 1988.
Decided May 23, 1988.

Allan I. Mendelsohn, with whom Marvin L. Szymkowicz, Washington, D.C., was on the brief, for appellant.

Louis Fireison, with whom Daniel J. Blum, Bethesda, Md., was on the brief, for appellee.

Before FERREN, TERRY, and STEADMAN, Associate Judges.

FERREN, Associate Judge:

This case presents primarily one question: whether a parent in arrears on a District of Columbia child support order under the Uniform Reciprocal Enforcement of Support Act (URESA) can successfully defend a motion for civil contempt by showing, not that he has complied with the URESA order as written, but that he has satisfied a Maryland divorce decree, incorporating a separation agreement, which he says as a matter of law limits his support obligation under the URESA order. At no time has he appealed or sought to modify the URESA order to bring it into conformity with his Maryland court-endorsed separation agreement. He simply has treated the URESA order as though it were limited by the separation agreement, has stopped

paying child support in accordance with the terms of that agreement, and thus has waited to invoke a Rule 60(b)(5)–type argument for relief from the URESA order until threatened with contempt of court. We agree with the trial court that appellant's strategy fails. He cannot defend a motion for contempt by collaterally attacking the previously unchallenged URESA order on which the motion is based; principles of claim preclusion—*res judicata*—stand in his way. Accordingly, we affirm the trial court order finding appellant over $9,000 in arrears in child support and holding him in contempt, although we must remand for entry of an amended judgment reflecting a minor arithmetical correction.

## I.

Appellant Gershon Kammerman and appellee Trudy Kammerman were divorced in 1974 by order of the Circuit Court for Montgomery County, Maryland. The final decree incorporated, but did not merge, their voluntary separation agreement. That agreement provided:

> The Husband agrees to pay to Wife the sum of Twenty Dollars ($20.00) per week for the support and maintenance of each of the children of the parties, to continue until such child shall die, marry, become self-supporting, or otherwise become emancipated, whichever event shall first occur.

By 1977, appellant, then a District of Columbia resident, had become in arrears on his child support obligation. Appellee filed a petition under URESA[1] in the Circuit Court for Montgomery County requesting payment of the arrearages and an increase in child support to $80 per week. *See generally* MD. FAMILY LAW CODE ANN. §§ 10–301 to –340 (1984 & 1987 Supp.). Pursuant to URESA procedure, the petition was transferred by Maryland, as the initiat-

ing state, to the District of Columbia, the responding jurisdiction. *See* D.C.Code §§ 30–302(2), –302(3), –314(a) (1981).

The Superior Court, after a hearing on appellee's URESA petition at which appellee was represented by Corporation Counsel and appellant by a private attorney, ordered appellant on March 24, 1978, to pay a unitary award of $40 per week for the support of the parties' two children.[2] The order was open-ended; it stated clearly that the sum of $40 would be payable every week "for the support and maintenance of his aforesaid dependents until further order of this Court." Neither party appealed that order or has ever moved to have it modified.

Interestingly, at the 1978 hearing the parties referred to the 1974 Maryland divorce decree, but no one mentioned the parties' separation agreement. Thus, the court did not rely upon that agreement, as such, in entering its order, although the $40 happened to correspond to appellant's weekly child support obligation, at the time, under the divorce decree that incorporated the agreement. For the time being, therefore, appellant's obligations under the URESA order and the separation agreement did not conflict.

Several months after entry of the 1978 URESA order, Corporation Counsel, on behalf of appellee, filed a motion for entry of judgment against appellant for arrearages due. Judgment was entered. In September 1979, Corporation Counsel filed a writ of attachment seeking to attach appellant's wages to satisfy the judgment of arrearages. In February 1980, Corporation Counsel filed another motion for entry of a judgment of arrearages but withdrew it when appellant paid the amount requested. In February 1981, Corporation Counsel filed a second writ of attachment. On March 16,

---

1. The Uniform Reciprocal Enforcement of Support Act has been enacted in some form in all 50 states and the District of Columbia. *See* REVISED UNIFORM RECIPROCAL ENFORCEMENT OF SUPPORT ACT, 9B U.L.A. 381 (1987); UNIFORM RECIPROCAL ENFORCEMENT OF SUPPORT ACT, *Id.* at 553.

2. The Maryland court, before transferring the URESA petition to the District of Columbia,

certified that appellee had made a prima facie showing that the children needed support in the amount of $80 per week. The Superior Court entered a *pendente lite* order requiring appellant to pay support in that amount. After an evidentiary hearing, however, at which appellant demonstrated his limited ability to pay, the court reduced the order to $40 per week.

1982, the trial court held a hearing on this second writ; both parties had counsel.

At the 1982 hearing, appellant argued that the underlying judgment of arrearages based upon the 1978 order was in error. Because one of the parties' two children had reached age 18 in 1980, he contended, his obligation to provide support for that child under the separation agreement incorporated in the 1974 divorce decree had terminated; accordingly, he argued, his corresponding obligation under the 1978 URESA order had terminated as well. The trial court quashed the writ on other grounds, however, and never reached appellant's objection to the continuing validity of the 1978 order as written.

Although appellant's interpretation of the 1978 order was not decided at the hearing, Corporation Counsel, representing appellee, had argued against that interpretation, noting that the 1978 order "for $40 per week was not broken down per child." Thus, as of March 16, 1982, appellant was on notice of a genuine dispute over the interpretation of his continuing support obligation. Notwithstanding this obvious disagreement, however, appellant took no action to vacate or modify the 1978 order based, for example, on partial satisfaction of the judgment. *See* Super.Ct.Dom.Rel.R. 60(b)(5). Instead, he merely stopped paying support as each child reached age 18, applying his own, unilateral interpretation of his obligation without resort to the court.

In October 1982, Corporation Counsel filed a motion for contempt against appellant based upon accumulated arrearages allegedly due under the 1978 URESA order. On the initial hearing date, appellant moved for a continuance. The continuance was granted and a new hearing date set. On that date, appellant received a second continuance but was required to sign a

notice to return to court. On the next hearing date, however, appellant failed to appear. The trial court issued a bench warrant for his arrest. Appellee, through private counsel, filed another contempt motion in November 1984. That motion apparently was not pursued.

Neither party took further action until February 1986, when appellee, represented by private counsel, filed a third contempt motion. Appellant appeared in court to oppose the motion and posted a $300 bond to avoid incarceration under the 1982 bench warrant, which was still outstanding. At the hearing on the contempt motion in July 1986, the court took testimony and heard argument from both parties, each of whom was represented by counsel. Appellant argued that the 1978 URESA order was no longer valid because by 1986 both children had reached age 18 and thus his support obligations under the separation agreement, which was controlling here, had ceased. Appellee replied that she understood appellant's support obligations under the agreement extended until each child, respectively, reached age 21, but that in any event the 1978 URESA order controlled, imposing a unitary support obligation that continued, in full, until both children reached age 21 (which had occurred by early 1986).[3]

The court rejected appellant's interpretation and discredited much of his testimony. On July 11, 1986, the court filed an order ruling that the 1978 URESA order obligated appellant to pay $40 per week in child support until both children reached age 21, finding appellant $9,560 in arrears, holding him in contempt of court, and ordering him committed to the District of Columbia Jail for 75 days or until such earlier time as he paid the arrearages. Appellant noted this appeal.[4] He also moved for a stay of exe-

---

3. The relevant language in the parties' separation agreement provides that appellant shall pay $20 per week for the support of each child until that child shall "become emancipated." *See supra* p. 795. The separation agreement, however, does not define "emancipated." The parties now dispute the meaning of that term.

4. The trial court subsequently filed a Memorandum and Order denying appellant's motion for relief from judgment and motion for stay of execution of the contempt order pending appeal, and granting appellee's request for attorney's fees. In that Memorandum, the court summarized the arguments and evidence presented at the July 1986 contempt hearing and reiterated the findings of fact and conclu-

cution of the contempt order. We granted the stay.

## II.

Before addressing the substantive issues on appeal, we must clarify the procedural posture. Appellant's defense to the motion for contempt was premised solely on the argument that, as of much earlier dates (when his children turned 18 in 1980 and 1983, respectively), he could not be held to a duty of support under the 1978 URESA order because he no longer was obliged to pay support under the parties' separation agreement. Although the trial court never explicitly characterized appellant's defense, the court in effect treated appellant's opposition as a Rule 60(b)–type motion for relief from the 1978 URESA order. *See* Super. Ct.Dom.Rel.R. 60(b) (identical to Super.Ct. Civ.R. 60(b)). It is the continuing validity of this underlying 1978 order that appellant addresses, once again, on appeal. Appellant does not seriously dispute that, unless the 1978 support order had become "void" or had been legally "satisfied" at the time of the contempt adjudication, he was in

arrears under the literal terms of the order and the adjudication of contempt was properly entered against him. This appeal, therefore, focuses exclusively on the trial court's rejection of appellant's Rule 60(b)–type defense to an order that otherwise provides a valid basis for a contempt adjudication.[5]

To prevail completely, appellant must establish at least two propositions: first, that the word "emancipated" as used in the separation agreement means age 18, the age of majority under Maryland law; second, that his obligation under the 1978 URESA order incorporated, without more, his support obligation under the separation agreement.[6]

The trial court apparently believed that, under the agreement, "emancipated" meant age 21.[7] We cannot dispose of this appeal entirely on that basis, however, for two reasons. First, there is no clear trial court finding. *See supra* note 7. Second, even if 21 were the applicable age under the settlement agreement, we would still have to determine whether the 1978 URESA order incorporated (and thus was limit-

5. For the sake of clarity, we note that appellant's postjudgment Rule 60(b) motion in the trial court for relief from the judgment of contempt, *see supra* note 4, is a separate matter, not at issue here.

6. If appellant were correct that the 1978 URESA order incorporated the separation agreement but wrong that "emancipated" meant age 18, he would still be in substantial, though different, arrears and thus not necessarily free from citation for contempt. In that situation, however, we would have to remand for a new exercise of trial court discretion as to the contempt motion.

7. The trial court appeared to make a finding to this effect at the hearing on July 10, 1986. While recognizing that the age of majority under Maryland statutory law is age 18, the trial court observed that the separation agreement did not use the clearly defined word "majority" but used instead "emancipated," an ambiguous term. The court stated:

[I]t is clear to me based on the testimony in this case that ... these children were not emancipated before they were 21.

sions of law underlying the court's July 11 order adjudicating appellant in contempt. The Memorandum and Order is a part of the record on appeal; thus, we have referred to its findings in writing this opinion.

They were living at home, except for when they were going to college. And clearly they had not been married or left the homestead to get a job or done—taken any other actions which traditionally, under the common law, as I understand it, are understood to constitute emancipation.

Although appellant testified that he understood "emancipated" to mean age 18, the trial court largely discredited his testimony. Appellee, on the other hand, testified that she understood appellant's support obligation to extend until each child reached age 21. Of her testimony the trial court stated: "I credit wholly the testimony of Ms. Kammerman in this matter."

In the later written Memorandum and Order, however, *see supra* note 4, the court concluded that because Maryland law did not apply "it is unnecessary to resolve" the age of emancipation under the settlement agreement. The court ruled, nonetheless, that the applicable age was 21 because the statutory law of the District of Columbia, establishing that age, applied to the case. There may be a problem with the trial court's legal analysis, *see infra* note 13, but we need not address it, for as elaborated in the text, this appeal cannot be decided solely by resolving whether the relevant age for child support here is 18 or 21.

ed by) that agreement, since the trial court ruled that the order created a greater obligation based on age 21 than the agreement did. More specifically, the trial court held that under the 1978 order appellant's $40 per week "child support obligation continued until *both* of the parties' children reached 21 years of age" (emphasis added),[8] whereas the settlement agreement called for a *pro rata* reduction once the oldest child became "emancipated." Appellee accordingly stresses on appeal that, contrary to any argument based on the settlement agreement, appellant's obligation under the URESA order was not curtailed until the youngest child reached age 21.[9] It follows that, just as appellant does not necessarily lose altogether on appeal if the age of emancipation is 21 (not 18 as claimed) under the separation agreement, *see supra* note 6, appellee cannot automatically win by showing the applicable age for termination of child support under the 1978 order is 21. Even if 21 is the age, the applicability—or not—of the separation agreement to the 1978 order will be determinative of the parties' respective rights.

We therefore must consider appellant's second, more fundamental proposition that forms the basis for his Rule 60(b)–type defense. He argues, in substance, that the courts of the District of Columbia, as the responding jurisdiction in appellee's URESA action, lack power to enter a URESA order greater in scope than the original support order (incorporating the separation agreement) entered in 1974 by the court in Maryland, the initiating state. The URESA court, he says, must defer to the law of Maryland, which both the divorce decree and the incorporated separation agreement say shall govern the parties' respective obligations. As a consequence, he contends, his obligations under the URESA order expired, and accordingly the order itself be-

came partially then wholly void, as his separable support obligations under the Maryland decree respectively ended. Alternatively, appellant suggests that, even if the URESA order cannot be called legally void, the trial court necessarily intended the 1978 URESA order to do no more than what the law allows: enforce his obligation under the Maryland agreement. (Appellant also argues that even if he is held to have a continuing duty of child support under the 1978 order, the trial court erred in its calculation of the total amount due.)

## III.

Appellant has a steep hill to climb here, for in general a party must comply with a court order notwithstanding a good faith belief that the order is in error. As the court stressed in *Hunter v. United States*, 48 App.D.C. 19 (1918):

Defendant cannot justify his conduct [in violating the order] upon his assumption that the order of the court ... was invalid. So long as the order stood, it must be obeyed by all whom it affected. To hold otherwise would be to permit anyone affected by the order to set up his own judgment against that of the court, which will not be permitted. The rule in such a case is concisely stated in *Gompers v. Buck's Stove and Range Co.*, 221 U.S. 418, 450, 55 L.Ed. 797, 809, 34 L.R.A.(N.S.) 874, 31 Sup.Ct.Rep. 492, [1911], as follows: "If a party can make himself a judge of the validity of orders which have been issued, and by his own acts of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the 'judicial power of the United States' would be a mere mockery."

*Id.* at 23. For that reason, we demand compliance with court orders—subject to

---

8. Without saying so, the trial court in effect applied the law generally applicable to a so-called unitary award of child support. *Miller v. Miller*, 74 App.D.C. 216, 122 F.2d 209 (1941) (Nevada decree); *Becker v. Becker*, 39 Md.App. 630, 631–632, 387 A.2d 317, 319 (1978) (Maryland law; citing cases from other jurisdictions).

9. As noted earlier, appellant's obligation under the 1978 URESA order was $40 per week "until further order of this Court," not until both children reached age 21. Appellee did not ask for enforcement beyond the date that the youngest child became 21, however, and the trial court accordingly used that date as the outside limit for enforcing the order.

sanction for contempt—until they are reversed on appeal or otherwise are modified by motion, for example, under Super.Ct. Dom.Rel.R. 59(e) or 60(b).[10] Where the issue is an alleged violation of an order *to* pay child support, "[t]he burden is upon the husband ... to show by competent evidence a reasonable excuse for his nonperformance and where he offers no valid reason for his default, the wife is entitled to the aid of the court in the enforcement of its order by imprisonment, unless the husband should purge himself of the arrears." *Johnson v. Johnson,* 195 A.2d 406, 407 (D.C.1963) (footnote omitted).

Appellant suggests two exceptions to this rule of absolute compliance with court orders—two "reasonable excuse[s]," *id.,* for discontinuing compliance with the literal terms of the 1978 URESA order—both of which are also grounds for relief under Super.Ct.Dom.Rel.R. 60(b). Relief is available under Rule 60(b)(4) if the underlying judgment is shown to be "void," or under Rule 60(b)(5) if the judgment is shown to have been "satisfied, released, or discharged."[11] We address each in turn.

### A.

Voidness of a court order is an absolute defense to a contempt motion, without regard to Rule 60(b)(4). *See In re Banks,* 306 A.2d 270 (D.C.1973). But the courts have narrowly construed voidness, however it is invoked. For example, for "a judgment to be void under Rule 60(b)(4), it must be determined that the rendering court was powerless to enter it." *V.T.A., Inc. v. Airco, Inc.,* 597 F.2d 220, 224 (10th Cir.1979).[12] A judgment is not void for Rule 60 purposes "merely because it is or may be erroneous." *Id.* (citing *Marshall v. Board of Education,* 575 F.2d 417, 422 (3d Cir.1978); *Lubben v. Selective Service System Local Board No. 27,* 453 F.2d 645, 649 (1st Cir.1972); *see Chicot County Drainage District v. Baxter State Bank,* 308 U.S. 371, 374–78, 60 S.Ct. 317, 318–20, 84 L.Ed. 329 (1940)). This means, fundamentally, that a judgment may be held void only if the court that entered it had no jurisdiction over the parties or the subject matter, *Hunter,* 48 App.D.C. at 23; 7 MOORE'S FEDERAL PRACTICE ¶ 60.25[2] at 60–225, or if the court's action was otherwise so arbitrary as to violate due process of law, 7 MOORE'S FEDERAL PRACTICE at 60–236.

Here, appellant has not alleged that the court lacked personal jurisdiction or violated his right to due process when it entered the URSEA order in 1978. Indeed, the record shows that appellant has repeatedly and voluntarily appeared before the courts of the District of Columbia and that he has received ample opportunity to present his case. The trial court's jurisdiction over the subject matter of this case is also undisputed. D.C.Code § 16–916 (1981

---

**10.** Appellant points out that he acted on advice of counsel when he unilaterally determined that his obligation to pay child support was at an end. Advice of counsel, however, is no excuse for the abrogation of a continuing legal duty. *See United States v. Offutt,* 145 F.Supp. 111 (D.C.1956), *modified* 101 U.S.App.D.C. 97, 247 F.2d 88, *cert. denied,* 355 U.S. 856, 78 S.Ct. 85, 2 L.Ed.2d 64 (1957).

**11.** More specifically, Super.Ct.Dom.Rel.R. 60(b) provides:
On motion and upon such terms as are just, the Court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: ... (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; ....

We do not address the latter clauses of subsection (b)(5) because the Maryland decree has been neither reversed nor vacated, and the relief sought by appellant is retroactive, not prospective, as the final clause requires. Rule 60(b)(6) provides that relief from judgment may also be granted for "any other reason justifying relief from the operation of the judgment." Relief under that subsection, however, is only to be granted in unusual and extraordinary circumstances, *see Union Storage Co. v. Knight,* 400 A.2d 316 (D.C.1979), and appellant does not rely on it here.

**12.** D.C.Super.Ct.Dom.Rel.R. 60(b) is identical in all respects to Fed.R.Civ.Pro. 60(b) except for deletion from the local rule of the reference in the federal rule to 28 U.S.C. § 1655 dealing with lien actions in the United States District Courts. *See* D.C.Super.Ct.Civ.R. 60 Comment (identical to D.C.Super.Ct.Dom.Rel.R. 60).

& 1987 Supp.) specifically directs the District of Columbia courts to issue a support order against any parent who fails to maintain his or her minor children, and D.C. Code § 30–306 (1981) specifically vests jurisdiction over URESA proceedings in the family division of the Superior Court. Appellant, therefore, presents no basis for concluding that the 1978 URESA judgment was, or at any point became, "void" under Rule 60(b)(4). While the trial court may have erred [13] in entering a URESA order greater in scope than the support obligation under the parties' separation agreement (although no one specifically called the agreement to the court's attention)— and to that extent issued a voidable order, *Hunter*, 48 App.D.C. at 23—the court did not act beyond its power.

## B.

We turn to appellant's Rule 60(b)(5)–type defense: that the 1978 URESA order should be deemed "satisfied" or "discharged." We have summarized the law applicable to a motion for civil contempt for failure to comply with a judgment of divorce in *Bolden v. Bolden*, 376 A.2d 430, 432 (D.C.1977):

It is axiomatic in our system of jurisprudence that where a court with jurisdiction over both the subject matter and the parties enters an order, such order must be obeyed. *United States v. Unit-*

*ed Mine Workers of America*, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947). Appellant having failed to challenge by appeal the judgment of July 1, 1975 [underlying the motion for contempt], which included the property settlement, that judgment is final, binding, and not subject to our review. *Maggio v. Zeitz*, 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476 (1948). She was under a continuing duty to comply therewith. Noncompliance cannot be justified by seeking to establish that the judgment was improvident. Rather, justification is established only upon a showing of inability to perform or substantial performance. *Maggio v. Zeitz, supra; Brotherhood of Locomotive Firemen & Enginemen v. Bangor & Aroostook Railroad*, 127 U.S.App.D.C. 23, 380 F.2d 570 [*cert. denied*, 389 U.S. 327, 88 S.Ct. 437, 19 L.Ed.2d 560] (1967).

It follows that, where the alleged contemnor demonstrates conclusively that the underlying judgment has been substantially performed, the trial court will abuse its discretion if it nonetheless holds that party in contempt. The defending party, however, cannot demonstrate substantial performance by collaterally attacking the underlying judgment, since "that judgment is final, binding, and not subject to our review." *Id.*

Appellant has failed to show that the 1978 judgment underlying appellee's mo-

---

**13.** Appellant's argument that the 1978 URESA order lawfully could impose no support obligation greater than that imposed by Maryland law in the 1974 decree incorporating the parties' settlement agreement proceeds as follows: The trial court, in entering the 1978 URESA order, was required pursuant to D.C.Code § 30–315 (1973) (recodified at D.C.Code § 30–315 (1981)) to make an independent determination of appellant's duty to pay support. *See Harris v. Kinard*, 443 A.2d 25, 27 (D.C.1982). In a recent series of cases, we have further defined how the court is to undertake that task. In *Rittenhouse v. Rittenhouse*, 461 A.2d 465 (D.C.1983), we held that where, as here, the defendant in a URESA action is a District of Columbia resident, District of Columbia law is applicable to that determination. The applicable District of Columbia law in a case such as this, however, is not the statutory law but rather the law as set forth in *Albus v. Albus*, 503 A.2d 1229 (D.C.1986). In *Albus*, we held that when the parties' voluntary separation agreement provides for child sup-

port, and the agreement has been incorporated but not merged in the divorce decree (as here), the amount of support ordered pursuant to a URESA petition shall presumptively be the amount provided for in the separation agreement. The court may order a different amount only if a party has requested modification of the amount of support provided for in the agreement and a modification is appropriate under the standard enunciated in *Cooper v. Cooper*, 472 A.2d 878 (D.C.1984). The *Cooper* standard permits modification only upon a showing of a material change in circumstances unforseeable at the time the original separation agreement was approved. *Id.* at 880. No such showing of changed circumstances has been made here; accordingly, if the trial court were to review the 1978 URESA order, absent such a *"Cooper"* showing, the court would be obliged to amend that order to bring it into conformity with the parties' separation agreement. We express no view on the correctness of this proffered analysis.

tion for contempt has been satisfied. That order, by its plain language, was incapable of satisfaction other than by continued payment in accordance with its terms. That order required payment of "$40 per week ... for the support of the aforesaid dependents until further order of this Court." Nowhere did the order make appellant's obligation coextensive with his obligation under the parties' separation agreement. In fact, the order contained no provision whatsoever as to its satisfaction or expiration. To the contrary, the order clearly required appellant to pay $40 each week until the court ordered him to do otherwise.[14]

Accordingly, the only way appellant, in defense of the contempt motion, could show that the 1978 order had actually been satisfied, despite its open-ended language, was to show that the order, as a matter of intent or of law, incorporated the settlement agreement. Clearly, however, there was no such intent. Although the 1978 order was consistent with the separation agreement at the time the order was entered, the trial court did not address, let alone rely on, that agreement; indeed, the parties did not even bring the agreement to the court's attention at the 1978 hearing. *See supra* note 2.

■ Nor was the agreement incorporated as a matter of law. The trial court had jurisdiction to enter the 1978 order according to its terms; it was not void. *See supra* Part III.A. In fact, as applied, the 1978 order and the separation agreement were not initially inconsistent with each other. The terms of the 1978 order did eventually diverge, in legal effect, from those of the 1974 Maryland order incorporating the settlement agreement. But, unless and until there was an appeal or a motion to modify the 1978 order to establish its dependence on the separation agreement—and that has not happened—it was a final order enforceable according to its own terms.[15] Appellant could not reasonably have expected his "incorporation" argument, *see supra* note 13, to prevail automatically once clear differences between the 1974 and 1978 orders emerged. Accordingly, each $40 payment required by the 1978 order became vested when due, absent a modification of the order; each payment obligation, as it matured, became a judgment debt which the court could not retroactively undo or modify. *Brown v. Brown*, 92 U.S.App.D.C. 319, 205 F.2d 720 (1953) (relying on *Kephart v. Kephart*, 89 U.S.App.D.C. 373, 380–81, 193 F.2d 677, 683–84 (1951), *cert. denied*, 342 U.S. 944, 72 S.Ct. 557, 96 L.Ed. 702 (1952)).[16]

**14.** The 1978 URESA order is plain, in contrast with the ambiguous order in *In re Slavin*, 412 S.W.2d 43 (Tex.1967), cited by appellant in his reply brief. In *Slavin*, the Supreme Court of Texas reversed a judgment of contempt for failure to comply with a $150 monthly support order for the maintenance of three children "until said children attain the age of eighteen years." *Id.* at 44. The defendant had interpreted this order to permit *pro rata* reduction as each child reached 18, whereas the trial court construed it as a unitary order requiring $150 monthly payments until the last of the children became 18. The reviewing court concluded that the order was too ambiguous to justify citing the defendant for contempt. In the instant case, however, the URESA order is unambiguous; it is absolutely open-ended: payments must be made "until further order of this Court." The trial court's limitation of enforcement to the period ending when the youngest child became 21 is attributable not to the language of the order but to appellee's limiting her motion for arrearages to that period. *See supra* note 9.

**15.** Appellee argues that appellant's defense to the contempt motion is tantamount to an appeal

of the underlying URESA order, and thus is untimely because it was not taken within 30 days after entry of that order in 1978. Presumably, had appellant initially perceived and been able to demonstrate a discrepancy between the terms of the 1978 order and those of the separation agreement, he would have had an arguable basis to appeal the order when it was entered. On the other hand, the appeal arguably did not become ripe until such time as the respective requirements under the order and the separation agreement diverged. We need not decide whether the 1978 order was immediately appealable by reference to the 1974 Maryland decree incorporating the separation agreement, or became appealable at some later date, or both. Appellant in any event could have moved at any time for modification of the 1978 order pursuant to Rule 60(b)(5), for example, and certainly could have appealed had his motion to modify the order been denied.

**16.** In *Brown v. Brown*, 92 U.S.App.D.C. 319, 205 F.2d 720 (1953), the United States Court of Appeals for the District of Columbia Circuit sustained a District Court ruling that, although a

Underlying this analysis, of course, is the principle of finality of judgments. Were we to allow a collateral attack on the 1978 order by way of a Rule 60(b)(5)–type defense to the contempt motion based on that order, we would be violating a fundamental rule of preclusion. The fact is, when the 1978 URESA order became final, it became *"res judicata* and not subject to collateral attack in the contempt proceedings." *Maggio v. Zeitz,* 333 U.S. 56, 68, 68 S.Ct. 401, 407, 92 L.Ed. 476 (1948). "The court had jurisdiction of the party and of the subject-matter. Hence, however defective or erroneous the proceedings, the [1978] judgment was not void, and could, at most, be voidable. It cannot, therefore, be collaterally impeached in this proceeding." *Hunter,* 48 App.D.C. at 23. *Accord, United States v. Rylander,* 460 U.S. 752, 756–57, 103 S.Ct. 1548, 1551–52, 75 L.Ed.2d 521 (1983) (defendant who refused to comply with Internal Revenue Service summons for corporate records, and did not appeal or otherwise seek reconsideration of order enforcing summons, is precluded from defending civil contempt action on ground of fifth amendment privilege against self-incrimination) (quoting *Maggio,* 333 U.S. at 69, 68 S.Ct. at 408); *Bolden,* 376 A.2d at 432.

In sum, appellant argues satisfaction of the wrong judgment: the 1974 Maryland decree incorporating the settlement agreement. He has not taken the timely action necessary—and available to him—to conform the 1978 URESA order to that 1974 order. *Res judicata,* therefore, precludes the trial court, as well as this court, from looking behind the 1978 order to see whether appellant might have made a case.

### IV.

In the absence of any other valid defense,[17] the trial court did not abuse its discretion in awarding arrearages to appellee under the plain language of the 1978 order and adjudicating appellant in contempt. *See Hill v. Bonded Adjustment Associates, Inc.,* 398 A.2d 16, 17–18 (D.C. 1979). We therefore affirm the trial court's order, except for the need to remand the case with instructions to reduce the award of arrearages from $9,560 to $9,400, reflecting the calculation set forth in appellee's brief at page 15.[18]

*So ordered.*

child had become emancipated, the court could not retroactively modify the father's support obligation by ordering remission of payments applicable to the period after emancipation. A support order, if not overturned on appeal, is enforceable according to its terms until the date a motion for modification is filed.

17. Appellant does not contend that his nonperformance was due to an inability to pay. *See Johnson v. Johnson,* 195 A.2d 406, 407 n. 1

(D.C.1963); *Lundregan v. Lundregan,* 102 U.S. App.D.C. 259, 252 F.2d 823 (1958). In fact, the trial court expressly found that appellant's resources were adequate to satisfy the arrearages.

18. Appellee has conceded an error in the court's calculation, and has stipulated that she will consent to a modification of the award from $9,560 to $9,400. The trial court otherwise did not err in calculating appellant's arrearage.